**Bob BULLOCK, Comptroller of Public Accounts et al., Appellants,**

v.

**EARLE M. JORGENSEN CO., Appellee.**

No. 8817.

Court of Civil Appeals of Texas, Texarkana.

Jan. 29, 1981.

Rehearing Denied March 3, 1981.

Mark White, Atty. Gen. of Tex., Myra A. McDaniel, Asst. Atty. Gen. of Tex., Austin, for appellants.

R. James George, Jr., Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellee.

HUTCHINSON, Justice.

This suit was instituted by appellee, Earle M. Jorgensen Co., a Delaware Corporation, to recover franchise taxes paid under protest pursuant to Tex.Tax.-Gen.Ann. art. 1.05. The trial court entered judgment for appellee for the sum of $69,057.61, with interest thereon, and this appeal was perfected by appellants, Bob Bullock, Comp-

troller of Public Accounts of Texas; Mark White, Attorney General of Texas; and, Warren G. Harding, Treasurer of the State of Texas. The case involves the determination of the amount of franchise taxes owed by the surviving corporation resulting from the merger of two foreign corporations.

Earle M. Jorgensen Co., as a California corporation, qualified to do business in Texas in 1936. The EMJ Company was incorporated in Delaware on February 28, 1975, with qualifying assets of $1,000.00, as a wholly owned subsidiary of the Earle M. Jorgensen Co. The EMJ Company was granted a Certificate of Authority to transact business in Texas on May 27, 1975. Earle M. Jorgensen Co. (California) and The EMJ Company merged as of June 30, 1975, with The EMJ Company being the survivor and taking the name of Earle M. Jorgensen Co., a Delaware corporation. Immediately upon the merger the Delaware corporation had the same assets, stockholders, management and property and did the same business as the former California corporation.

Prior to the merger the California corporation filed a 1975 franchise tax report for the tax period from May 1, 1975, through April 30, 1976, based upon its accounting year of January 1, 1974, through December 31, 1974, and paid on or before June 15, 1975, the sum of $54,591.00 as its franchise tax. The EMJ Company did not pay any franchise tax. Appellee, the Delaware corporation, filed a First Year Franchise Tax Report for the tax period of May 27, 1975, through April 30, 1977, on or about August 25, 1976. The report was based on appellee's financial condition as of May 31, 1976, and used a one year tax rate of $4.25 per thousand of apportioned taxable capital. Appellants determined that appellee owed $62,567.80 additional tax plus a penalty by applying a tax rate of $8.20 per thousand to the apportioned taxable capital to reflect the tax period from May 27, 1975, to April 30, 1977. After exhausting its administrative remedies, appellee paid under protest on or about July 17, 1978, the sum of $69,-057.61 of which $62,567.80 was tax and $6,489.81 was interest. This suit was filed on the date of the payment.

■ The issue presented is whether appellee, as a Delaware corporation, should receive credit for the franchise tax paid by Earle M. Jorgensen Co., as a California corporation, on or before June 15, 1975, some fifteen days prior to its merger with appellee. Appellants assert that the trial court erred in holding that the doctrine of continuity and/or the Texas Business Corporation Act prohibited the payment of a franchise tax by each of two merging corporations for the same franchise tax year. In making the assertion appellants rely upon Tex.Tax.-Gen.Ann. art. 12.01, et seq., and point out that as of May 27, 1975, two corporations—Earle M. Jorgensen Co., a California corporation, and The EMJ Company, a Delaware corporation—had qualified to do business in Texas and as franchise taxes are due and payable in advance for an entire year, the tax was correctly assessed as being owed by both corporations for the entire year. Appellants point out that the power to do business was extended to both corporations and that the taxes were charges made by the State against each of the corporations for the right to do business and not for the exercise of such right. Appellants correctly state that the franchise tax is a charge made by the state against a corporation for the privilege of doing business in the state. *General Dynamics Corporation v. Bullock*, 547 S.W.2d 255 (Tex.1976), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 717, 54 L.Ed.2d 751 (1978); *Riveroaks Development Corp. v. Sheppard*, 246 S.W.2d 236 (Tex.Civ.App. Austin 1952, writ ref'd); *Houston Oil Company of Texas v. Lawson*, 175 S.W.2d 716 (Tex.Civ.App. Galveston 1943, writ ref'd). Whether the privilege to transact business within the state is actually utilized is not material insofar as the franchise tax is concerned. Tex.Tax.-Gen. art. 12.01(1).

■ Appellee's response is based upon Art. 5.06 A(4), Tex.Bus.Corp.Act Ann., which provides, in part, that after a merger the surviving corporation

" . . . shall thereupon and thereafter possess all the rights, privileges, immunities,

and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, . . . shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed."

Fifteen days before the merger of the California corporation with the surviving Delaware corporation, the California corporation had paid $54,591.00 for the "franchise" or "privilege" to do business in Texas until April 30, 1976. By reason of Article 5.06 A(4), Tex.Bus.Corp.Act Ann., when the California corporation merged with the Delaware corporation on June 30, 1975, it brought with it the franchise or privilege to do business in Texas and the surviving corporation is entitled to credit for having it. This result is consistent with the language used by the court in *Calvert v. Humble Oil and Refining Company*, 381 S.W.2d 229 (Tex.Civ.App. Austin 1964, writ ref'd n. r. e.), whether such is mere dicta or an alternative holding. There the court stated:

"... If Humble of Delaware is required to pay an additional franchise tax for this same five month period for which Humble has already paid, there will be a pyramiding of taxes on the same capital. This result should not be reached absent plain and specific statutory enactments."

We agree with the above and in the absence of any plain and specific enactments to the contrary affirm the judgment of the trial court.

The judgment of the trial court is affirmed.