SUNOCO TERMINALS, INC., Appellant,

v.

Bob BULLOCK, Comptroller of Public Accounts, et al., Appellees.

No. 3–87–120–CV.

Court of Appeals of Texas, Austin.

Aug. 10, 1988.

David A. Hampel, Dallas, for appellant.

Jim Mattox, Atty. Gen., Marianne S. Dwight, Asst. Atty. Gen., Austin, for appellees.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

GAMMAGE, Justice.

Sunoco Terminals, Inc. ("Sunoco") appeals from a take-nothing judgment in a protest suit seeking refund of corporate franchise taxes. We will affirm the judgment.

*Issues*

This appeal involves two issues. First, due to the timing of the calculations necessary to compute corporate franchise taxes in Texas, certain capital equipment transferred to Sunoco from its sister company Sun Oil Company of Pennsylvania ("Sun Penna") was included in both companies' franchise-tax bases for the period January 29, 1976 through April 30, 1977. Sunoco wants a credit for any franchise tax paid by Sun Penna as a result of the capital equipment being included in Sun Penna's franchise-tax base. Second, because Sunoco received the capital equipment halfway through its first year of business, Sunoco wants to prorate the effect of this additional capital on its franchise-tax base.

*Facts*

The facts are stipulated. Sunoco is a wholly-owned subsidiary of Sun Company, Inc. ("Sun"). Sun Penna is a Pennsylvania corporation qualified to do business in Texas and is also a wholly-owned subsidiary of Sun.

Established companies are required to pay corporate franchise taxes for the period from May 1st of each year to April 30th of the following year. Tex.Tax–Gen.Ann. art. 12.01 (1969) (applicable to this case, but now *see* Tex.Tax Code Ann. § 171.001 *et seq.* (1982)). The tax is based on a company's total taxable capital allocable to Texas. *Id.* at art. 12.02(1)(a). This allocation is made by multiplying total taxable capital by the percentage relationship which the gross receipts from a company's business done in Texas bear to the total gross receipts of the company from its entire business. *Id.* The tax is paid in advance based on the condition of the company on the last day of the company's preceding fiscal year. *Id.* at art. 12.08(1).

Prior to June 1, 1976, part of Sun Penna's business consisted of the operation of certain oil terminals and related assets (the "terminals") located in Texas. Sun Penna computed and reported its franchise tax in advance for the period May 1, 1975 through April 30, 1976, on the basis of its books and records of December 31, 1974; and for the period May 1, 1976 through April 30, 1977, on the basis of its books and records as of December 31, 1975. On both December 31, 1974 and December 31, 1975, the terminals were reflected as assets on Sun Penna's books and records, and gross receipts from the terminals were included in Sun Penna's gross receipts for the years 1974 and 1975.

Newly formed corporations do not pay franchise taxes in advance based on the preceding year's books because there are no "preceding year's books." New corporations, consequently, pay their initial franchise taxes at the end of the corporation's first actual year of business based on the condition of the books at that time. *Id.* at art. 12.06. At that time, such a corporation pays franchise taxes for three periods: retrospectively for its first year of business; in advance for any time remaining between the end of its first year of business and the end of that tax year (*i.e.,* April 30th, allowing the corporation to coordinate with the May 1st to April 30th tax year); and in advance for the next year's taxes. *Id.* All three of these payments are based on the

condition of the company's books at the end of its first year of business. *Id.*

Sunoco was incorporated on January 29, 1976. Effective June 1, 1976, Sun Penna transferred the terminals and related liabilities to its parent company Sun. On the same day, Sun contributed the terminals to Sunoco. The terminals were reflected on the books of Sunoco as $21,975,760 net liability.

On or before June 15, 1977, Sunoco filed its initial franchise-tax report and paid its franchise taxes for its first taxable period January 29, 1976 through January 28, 1977 (its first year of business), for its short taxable period January 30, 1977 through April 30, 1977 (to coordinate with the tax year), and for its second taxable period May 1, 1977 through April 30, 1978 (paying in advance as an established corporation). All three of these payments were based on the books and records of Sunoco as of January 31, 1977 (its only historical data).

If the timing of the franchise-tax calculations for both Sun Penna and Sunoco is plotted on a time line (*see* Appendix A), it becomes apparent that the terminals were included in both companies' tax bases for the period January 29, 1976 through April 30, 1977. This occurred because newly formed corporations pay initial franchise taxes after they have been in business for a year (here, after Sunoco received the terminals), while established corporations pay franchise taxes in advance (here, before the terminals were transferred to Sunoco).

Sunoco paid, under protest, $246,015.08 in Texas franchise taxes in its initial reporting period set out above. The Comptroller placed the total amount in a suspense account with the Treasurer awaiting Sunoco's suit for the protested payment. Sunoco filed suit against the Comptroller, the Treasurer, and the Attorney General (collectively referred to as the "State"), under Tex. Tax.–Gen.Ann. art. 1.05 (1969), the protest statute, seeking to recover $136,819.83, the part of the $246,015.08 payment representing a tax on the same capital for the period January 29, 1976 through April 30, 1977. The parties stipulated the facts, exhibits,

and issues to be considered and submitted the case to the district court. The court entered a take-nothing judgment against Sunoco and ordered the $246,015.08 transferred to the appropriate State account. Sunoco appeals from this judgment and brings two points of error.

### Points of Error

■ Sunoco contends in its first point of error that the district court erred as a matter of law in entering judgment that the franchise taxes paid by Sunoco from January 29, 1976 through April 30, 1977 were lawfully assessed. We disagree.

Except as provided in the franchise tax statute, all domestic and foreign corporations doing business in Texas must pay a franchise tax. Tex.Tax–Gen.Ann. art. 12.-01 *et seq.* (1969). "The granting of the privilege to transact business in this state confers economic benefits, including the opportunity to realize gross income and the right to invoke the protection of local law. The Texas franchise tax is a tax on the value of this privilege." *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 270 (Tex.1979).

The legislature has decided that the value of the privilege would be determined by the corporation's taxable capital allocable to Texas. Taxable capital is the sum of a corporation's stated capital, surplus, and undivided profits. Tex.Tax–Gen.Ann. art. 12.01 (1969). The taxable capital allocable to Texas is determined by multiplying taxable capital by the percentage relationship between the corporation's gross receipts from business done in Texas and the corporation's gross receipts from business done everywhere. *Id.* at art. 12.02(1)(a). The franchise-tax rate is then applied to taxable capital allocable to Texas to determine the franchise tax due. *Id.* at art. 12.01.

Moreover, the legislature has determined that established corporations shall pay franchise taxes in advance based on the condition of their books on the last day of the corporation's preceding fiscal year. *Id.* at arts. 12.065 & 12.08. Finally, the legislature has determined that newly formed corporations shall pay their initial franchise taxes based on the condition of their books at the end of the corporation's first year of business. *Id.* at art. 12.06(1).

■ Sunoco does not contend it is exempt from franchise taxes; nor does it contend the statutory scheme discussed above was improperly applied; Sunoco simply contends the State may not lawfully include the same capital in the tax bases of two related corporations during the same franchise-tax period. Sunoco cites *Calvert v. Humble Oil & Refining Co.*, 381 S.W.2d 229 (Tex.Civ.App.1964, writ ref'd n.r.e.), in support of this proposition.

In *Calvert,* Humble Oil & Refining Co., a Delaware corporation, was organized in September 1959, with only qualifying assets and with its qualifying capital stock held by Humble Oil & Refining Corporation, a Texas corporation. On December 1, 1959, Humble of Texas conveyed all of its business, properties, franchises, and assets to Humble of Delaware in exchange for all of the remaining authorized but unissued capital stock of Humble of Delaware. Having transferred all of its assets along with the accompanying liabilities to Humble of Delaware, Humble of Texas merged with Standard Oil Company and ceased to exist. *Id.* at 230.

Before these occurrences, Humble of Texas had paid the State a required special franchise tax in advance for the following year. *Id.* The State attempted to impose the same special tax on Humble of Delaware for the same year. *Id.* at 231. The Delaware corporation paid the additional tax under protest and sued for recovery claiming the special tax was not applicable to first-year corporations and the court of civil appeals agreed. *Id.* at 232–33. The court also stated:

"In reaching this conclusion, we are also moved by the equities of the situation.... If Humble of Delaware is required to pay an additional franchise tax for this same five-month period for which Humble has already paid, there will be a pyramiding of taxes on the same capital.

This result should not be reached absent plain and specific statutory enactments." *Id.* at 233.

Sunoco concedes the above-quoted language is not the holding of *Calvert.* Furthermore, "The franchise tax does not burden any specific asset of the corporation, but instead ... [the] tax is a payment for the privilege of transacting business within Texas." *Texaco, Inc. v. Calvert,* 526 S.W. 2d 630, 633 (Tex.Civ.App.1975, writ ref'd n.r.e.). Each distinct entity is responsible for paying the tax in accordance with Tex. Tax.-Gen.Ann. art. 12.01 *et seq.* (1969), except as provided by that statute. Finally, we see no "plainer or more specific statutory enactment" mandating affirmance of the district court's conclusion than art. 12.- 01 *et seq.* itself.

Sunoco points out that a Texas court has held that the surviving corporation of two merging corporations is entitled to a credit for any franchise taxes paid on assets contributed by the consolidating corporation. In *Bullock v. Earle M. Jorgensen Co.,* 613 S.W.2d 12 (Tex.Civ.App.1981, writ ref'd n.r. e.), the Earle M. Jorgensen Company of California paid its franchise taxes for 1976 in 1975. Subsequently, on June 30, 1975, the California corporation merged with newly created E.M.J. Corporation of Delaware. The Delaware corporation sought credit against its asserted franchise-tax liability for the California corporation's previous payment. The State made the same arguments it makes in this appeal—that the plain provisions of the franchise-tax statute require each distinct entity to pay for the privilege of transacting business in Texas according to the method chosen by the legislature. *Id.* at 13.

The court of civil appeals held that the Delaware corporation was entitled to a credit because the surviving corporation of a merger is conferred the rights, privileges, immunities, and franchises of the consolidating corporation under Tex.Bus. Corp.Act Ann. art. 5.06A(4) (1980) (now *see* Supp.1988). The court also quoted with approval the dicta from *Calvert* regarding the pyramiding of taxes on capital. *Id.* at 13–14.

We note that while the *Jorgensen* court's reliance on art. 5.06A(4) of the Tex.Bus. Corp. Act may be equitable, it conflicts with the "except as herein provided" language of Tex.Tax–Gen.Ann. art. 12.01 (1969), making the franchise-tax statute the sole determinant of franchise-tax liability in Texas. In any event, the holding in *Jorgensen* is consistent with our disposition of this appeal.

As noted earlier, each distinct entity is responsible for paying franchise taxes. *Id.* When two corporations merge, there remains only one entity responsible for the tax, and it does not matter whether the consolidating or surviving corporation paid the tax. In Sunoco's case, however, there is no merger and two companies desiring the privilege to transact business in Texas exist. How should we calculate these entities' franchise-tax liabilities? Sunoco seems to argue that because the terminals were transferred by "a mere paper transaction between related parties," this should have some bearing on our decision. We see no distinction, however, between a transfer among related parties and one among unrelated parties. In either case, two distinct entities remain and we must apply art. 12.01 to determine their respective franchise-tax liabilities. To accept Sunoco's argument, we must establish the policy that all sales of capital equipment by established companies to newly formed companies carry a concomitant tax credit. Whatever the wisdom and equitable arguments of such a policy, a decision to establish it is one for the legislature and not the courts. Sunoco's first point of error is overruled.

Sunoco contends in its second point of error that the district court erred as a matter of law in entering judgment that the State's allocation method fairly represented Sunoco's business activity in Texas. We disagree.

Sunoco was incorporated January 29, 1976, with qualifying capital of $1000. On June 1, 1976, Sun Penna transferred to Sun and Sun contributed to Sunoco terminals worth $21,975,760. When Sunoco paid its initial franchise tax at the end of its first

year of business, the terminals were listed on Sunoco's books and consequently included in Sunoco's tax base. Sunoco complains that this method of allocating capital does not take into account the fact that Sunoco did not receive the terminals until halfway through its first year of business.

Sunoco cites Tex.Tax–Gen.Ann. art. 12.-02(2) (1969) in support of allowing an alternative allocation method that would prorate the effect of the terminals on Sunoco's tax base. Article 12.02(2) permits a taxpayer *to petition* the Comptroller for an alternative allocation method if the statutory formula would not fairly represent the taxpayer's business activity in Texas. *Id.* The Comptroller has promulgated a rule requiring that such petitions be filed in writing at least fifteen days prior to the due date of the initial franchise tax report. 34 Tex.Admin.Code § 3.393(a)(2) (1986). The validity of this rule has been upheld by the Texas Supreme Court. *Bullock v. Hewlett–Packard, Co.*, 628 S.W.2d 754 (Tex.1982). It appears Sunoco could have, but did not, comply with 34 Tex.Admin.Code § 3.393(a)(2), thereby waiving its access to an alternate method of allocation. Sunoco's second point of error is overruled.

The judgment of the trial court is affirmed.

**423**

## APPENDIX  A

### TIME LINE OF FACTS
(Not to Scale)

<u>Sunoco Terminals, Inc.</u>:

| Incorporated 1/29/76 | Receives Sun Penna Assets 6/1/76 | End of First Tax Period 1/28/77 | End of Second Tax Period 4/30/77 | End of Third Tax Period 4/30/78 |

1/31/77
Taxable Capital
Determined for
All Periods

<u>Sun Penna</u>:

End of Tax Year 1/29/76 4/30/76                     End of Tax Year 4/30/77

5/1/75

| 12/31/74 Taxable Capital Determined for Period 5/1/75 – 4/30/76 | 12/31/75 Taxable Capital Determined for Period 5/1/76 – 4/30/77 | 12/31/76 Taxable Capital Determined for Period 5/1/77 – 4/30/78 |