TANDY CORPORATION, Appellant,

v.

John SHARP, Comptroller of Public Accounts of the State of Texas; Dan Morales, Attorney General of the State of Texas; and Martha Whitehead, Treasurer of the State of Texas, Appellees.

No. 3–93–339–CV.

Court of Appeals of Texas,
Austin.

March 9, 1994.

Rehearing Overruled April 27, 1994.

Samuel Downing McDaniel, Austin, for appellant.

Dan Morales, Atty. Gen., William E. Storie, Asst. Atty. Gen., Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This appeal involves construing a Tax Code provision that assesses the value of a corporation surviving a merger for the purpose of imposing the state franchise tax. *See* Act of Apr. 2, 1985, 69th Leg., R.S., ch. 31, § 8, 1985 Tex.Gen.Laws 405, 406–07 (Tex. Tax Code Ann. § 171.153, since amended) ("Former Tax Code § 171.153"). The Comptroller interprets section 171.153(c) to require that the surviving corporation report receipts from business done in Texas for the twelve-month period ending on the day after the merger, rather than reporting receipts received through the last day of its preceding fiscal year. According to the Comptroller's interpretation, Tandy Corporation, as the corporation surviving the merger, would have to report one extraordinarily large receipt in two separate franchise tax reporting periods. Tandy paid $269,137.22 of its 1986 franchise taxes under protest and sued John Sharp, Comptroller of Public Accounts; Dan Morales, Attorney General; and Martha Whitehead, Treasurer, for a refund. *See* Act of May 30, 1983, 68th Leg., R.S., ch. 283, § 6, 1983 Tex.Gen.Laws 1367, 1373–74 (Tex.Tax Code Ann. § 112.052, since amended). The district court granted the Comptroller's motion for summary judgment, affirming the imposition of the tax and denying any refund. Tandy appeals, complaining in one point of error that the trial court erred in granting summary judgment in favor of the Comptroller. We will affirm the trial court's judgment.

## FRANCHISE TAX FOLLOWING CORPORATE MERGER

■ The franchise tax is imposed on the privilege of doing business in the corporate form in this state. The Tax Code provides that a corporation must pay the franchise tax in advance, and bases the amount of the tax on the corporation's value in the preceding fiscal year. The corporation is taxed only on that portion of its taxable capital corresponding to the percentage of corporate business conducted in this state. Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 1, Tex.Gen.Laws 1490, 1698 (Tex.Tax Code Ann. § 171.106, since amended) ("Former Tax Code § 171.-106"). We discussed this allocation principle in *Sunoco Terminals, Inc. v. Bullock*, 756 S.W.2d 418, 420 (Tex.App.—Austin 1988, no writ):

The Legislature has decided that the value of the privilege would be determined by the corporation's taxable capital allocable to Texas. Taxable capital is the sum of a corporation's stated capital, surplus, and undivided profits. The taxable capital allocable to Texas is determined by multiplying taxable capital by the percentage relationship between the corporation's gross receipts from business done in Texas and the corporation's gross receipts from business done everywhere. The franchise-tax rate is then applied to taxable capital allocable to Texas to determine the franchise tax due.

*Sunoco Terminals*, 756 S.W.2d at 420 (citations omitted). We mention this allocation factor now because it is essential to understanding Tandy's argument in this appeal.

The Tax Code sets out three periods for which franchise tax shall be paid: (1) an initial period of one year from the date of incorporation or authorization to conduct, or of first conducting, business in this state; (2) a second period from the first anniversary of the event defining the initial period until the following April 30; and (3) after the initial and second periods, a regular annual period from May 1 to April 30. Act of Apr. 2, 1985, 69th Leg., R.S., ch. 31, § 5, 1985 Tex.Gen. Laws 405, 406 (Tex.Tax Code Ann. § 171.151, since amended). ("Former Tax Code § 171.-151").

Section 171.153 describes what business shall constitute taxable capital in each of these reporting periods. This appeal focuses on the regular annual period. Until 1985, the Tax Code provided in pertinent part: "The tax covering the regular annual period

is based on the business done by the corporation during its fiscal year that ends in the year before the year in which the tax is due." Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 1, Tex.Gen.Laws 1490, 1699 (Tex.Tax Code Ann. § 171.153, since amended). Reading that version of section 171.153(c) and Former Tax Code section 171.151 together, a corporation's 1986 franchise taxes would be based on the business done during its fiscal year that ended between May 1, 1985, and April 30, 1986. Tandy's fiscal year ended on June 30.

We next examine how two corporations with differing fiscal years could previously avoid paying franchise taxes on a portion of their business conducted in Texas. If the surviving corporation's fiscal year ended June 30, as did Tandy's, in 1986 it would report no receipts of the non-surviving corporation on business done in this state after June 30, 1985, and before April 30, 1986. Because franchise taxes are calculated on the surviving corporation's preceding fiscal year, all receipts of the non-surviving corporation occurring after the close of the surviving corporation's fiscal year would escape taxation.

To close this loophole, in 1985 the legislature amended section 171.153(c) to impose a special reporting period for a corporation surviving a merger occurring after the end of its preceding fiscal year and before May 1 of the report year:

> The tax covering the regular annual period is based on the business done by the corporation during its fiscal year that ends in the year before the year in which the tax is due; *unless a corporation is the survivor of a merger which occurs between the end of its fiscal year in the year before the report year and May 1 of the report year, in which case the tax will be based on the financial condition of the surviving corporation for the 12–month period ending on the day after the merger.*

Former Tax Code § 171.153(c) (emphasis added). If, as the Comptroller argues, this amendment imposes a new accounting period following a merger, it would require the surviving corporation to be taxed on all business conducted in this state by both corporations in the twelve months preceding the merger. Tandy argues that the amendment does not impose a new accounting period following a merger because "financial condition" does not mean "business done" and because the overlap in reporting occasioned when the surviving corporation returns to a fiscal year accounting period the following year would create double taxation in some circumstances and tax avoidance in others.

## BACKGROUND

Tandy is the survivor of a merger that occurred April 30, 1986. Tandy's fiscal year ended June 30, 1985, subjecting it to the reporting provisions of Former Tax Code section 171.153(c). In a transaction unrelated to the merger, Tandy had extraordinary receipts of $100,000,000 on September 15, 1985. The Comptroller interprets section 171.153(c) to require that Tandy, in 1986, be taxed on business done in Texas for the twelve-month period ending May 1, 1986, the day following the merger. Therefore, the Comptroller included the $100,000,000 receipts in calculating Tandy's franchise tax in 1986. In 1987, Tandy was taxed for the regular annual period "based on business done by the corporation during its fiscal year that ends in the year before the year in which the tax is due." Former Tax Code § 171.153(c). Tandy's taxable capital for 1987 was assessed on business done in the fiscal year ending June 30, 1986, a period that *again* included the extraordinary receipts of September 15, 1985. *Id.* Understandably, Tandy objects to subjecting these large receipts to taxation in two reporting periods, 1986 and 1987. Tandy argues that the Comptroller misinterpreted the directive of Former Tax Code section 171.153(c) in calculating its franchise tax in 1986 following the merger.

## CONSTRUING SECTION 171.153(c)

■ Although this is an appeal from a summary judgment, Tandy does not assert the existence of any fact issue. Rather, it brings a single point of error, arguing that the trial court, like the Comptroller, misinterpreted section 171.153(c). Matters of statutory construction are questions of law

and do not preclude summary judgment. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). If we agree with the trial court's construction of the amendment, we must affirm the summary judgment.

We begin by reviewing the competing interpretations Tandy and the Comptroller offer as to the proper construction of the 1985 amendment to the Tax Code. Our discussion entails a review of the two components necessary to calculate franchise tax: (1) total taxable capital of the corporation, and (2) an allocation factor based on the percentage of gross receipts from business done in Texas.[1] Both Tandy and the Comptroller agree that following a merger, the surviving corporation's taxable capital must be calculated for a twelve-month period ending the day after the merger. They disagree about the time period for which gross receipts are to be included to arrive at the allocation factor for portioning that taxable capital to this state.

Tandy argues that although Former Tax Code section 171.153(c) required that a corporation's overall "financial condition" be calculated for the twelve-month period ending the day after the merger, the allocation factor to determine the percentage of "business done" in this state should include receipts received during the preceding fiscal year, the same period used when there is no merger. By contrast, the Comptroller reads section 171.153(c) to provide for an alternate reporting period following certain mergers, which required both the surviving corporation's taxable capital and allocation factor representing "business done" in Texas to be calculated for a twelve-month period ending the day after the merger.[2]

■ In support of its argument, Tandy points out that the tax covering the initial

period, the second period, and the regular annual period are based on "business done" in this state. But when the amendment imposes an alternate reporting period following certain mergers, the statute omits the term "business done" and refers only to the "financial condition" of the surviving corporation. Tandy insists that the allocation factor must be based on "business done" during the preceding fiscal year, even following a merger. Tandy argues that by using a different term in the amendment, the legislature intended a different computational scheme.

We disagree that the use of the term "financial condition" in the amendment prescribes an entirely different computational scheme. This Court has held that the mere use of a different term in a situation in which the previous term could have been repeated does not necessarily establish a different legislative intent.

> There are four references to "gross receipts" and one reference to "gross income." Channel argues that since two different terms were used, two different meanings were intended. Although we presume the legislature uses every word in a statute intentionally, it does not necessarily follow that the 1920 legislature intended different meanings for gross receipts and gross income.

*Railroad Comm'n v. Channel Indus. Gas Co.,* 775 S.W.2d 503, 505–06 (Tex.App.—Austin 1989, writ denied) (citations omitted). Furthermore, the computational scheme involving the two components of taxable capital and an allocation factor based on business done in this state is governed by an entirely different statute. *See Former Tax Code* § 171.106. If the legislature had intended to change this scheme, we believe it would have amended that section, rather than amending

---

1. Former Tax Code § 171.106 provided:
   The part of a corporation's taxable capital that is allocated to this state and that is used to determine the amount of the tax imposed by this chapter is equal to the corporation's total taxable capital multiplied by a fraction, the numerator of which is the corporation's gross receipts from business done in this state and the denominator of which is the corporation's gross receipts from its entire business.

2. The Comptroller's position is reflected in an administrative rule promulgated to apply only to

corporations that survive mergers occurring after August 25, 1985, but before August 13, 1991:

> The survivor should combine its receipts and the receipts of the non-survivors for the same [twelve-month] period to determine the percent of Texas business for the taxable capital component of the tax.

34 Tex.Admin. Code § 3.565(d) (1992). For the rule governing mergers occurring after August 13, 1991, see 34 Tex.Admin.Code § 3.572 (1992).

section 171.153, which defines reporting periods.

This Court has used the term "condition of their books on the last day of the corporation's preceding fiscal year" to describe "business done," the basis for imposition of franchise taxes during the initial period and the regular annual period. *See Sunoco Terminals,* 756 S.W.2d at 420. We believe the term "financial condition" as used in the amended statute is inclusive of, not distinct from, the term "business done."

■ Both parties agree that the amendment in question was intended to close a loophole allowing evasion of franchise taxes through corporate mergers. The amendment accomplishes this objective by providing an alternative to the regular annual period of calculating franchise taxes, requiring the inclusion of a full year of receipts from both merging corporations in the calculations. Taxes are based on business done in the preceding fiscal year *unless* there is a merger, "in which case the tax will be based on the financial condition of the surviving corporation for the 12–month period ending on the day after the merger." Tax Code § 171.153(c). To adopt the appellant's reading of the statute, we would have to ignore the word "unless," which indicates an exception to the previously stated general rule. We presume that every word in a statute is used for a purpose. *Jessen Assocs., Inc. v. Bullock,* 531 S.W.2d 593, 600 (Tex.1976); *Eddins–Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (1957). Appellant argues that despite a merger, franchise taxes should continue to be based on business done during the preceding fiscal year. This interpretation ignores the unambiguous language of the statute.

■ Tandy asks us to reject the Comptroller's construction of Former Tax Code section 171.153(c) because it does not close all loopholes for excluding taxable capital following corporate mergers, and in certain cases requires double-reporting. The Comptroller replies that any system of assessing the value of two merging corporations will result in certain receipts being double-counted or excluded under some circumstances. Despite the hardship imposed on this taxpay-

er under these circumstances, we agree that the Comptroller's understanding of the statute is the only rational interpretation. Without bringing a separate point of error challenging the constitutionality of the statute, Tandy attempts to argue that the Comptroller's construction of the statute should be ruled unconstitutional because it creates an unequal and non-uniform system of taxation. Although it is not properly presented, we will address this issue. A system that results in one party paying a disproportionately higher tax is not inherently unconstitutional so long as the legislation is rationally related to a legitimate governmental goal and the system operates equally within each class. *Channel Indus. Gas Co.,* 775 S.W.2d at 507–08. Additionally, the United States Supreme Court has held that "the Federal Constitution does not afford protection against double taxation by a state." *Baker v. Druesedow,* 263 U.S. 137, 140–141, 44 S.Ct. 40, 41–42, 68 L.Ed. 212 (1923). This Court has previously upheld a franchise tax formulation that required the same asset to be reported by two corporations. *See Sunoco Terminals,* 756 S.W.2d at 420. Any twelve-month period selected to assess the value of merging corporations will overlap with the surviving corporation's fiscal year, giving rise to a potential for some double reporting or some unreported receipts. The 1985 amendment to section 171.-153(c) made tax avoidance more difficult than under the previous system that was based on business done during the surviving corporation's preceding fiscal year. The double-reporting occasioned under circumstances of the present controversy does not render unconstitutional a rational legislative attempt to prohibit tax avoidance through corporate mergers. We overrule Tandy's point of error and affirm the judgment of the trial court.