TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00224-CV






Carole Keeton Rylander, Successor-In-Interest to John Sharp, Comptroller of Public 


Accounts of the State of Texas; and John Cornyn, Successor-In-Interest to


Dan Morales, Attorney General of the State of Texas, Appellants


v.


Palais Royal, Inc. and 3 Beall Brothers 3, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. 96-03719, HONORABLE PAUL DAVIS, JUDGE PRESIDING 






 Appellants Carole Keeton Rylander, Comptroller of Public Accounts of the State of
Texas, and John Cornyn, Attorney General of the State of Texas, (1) appeal from a summary judgment
in favor of appellees Palais Royal, Inc. and 3 Beall Brothers 3, Inc. (together "Bealls"), arising from
a tax-protest suit. See Tex. Tax Code Ann. § 112.052 (West 2001). (2) The district court found the
implementation of the earned-surplus amendments to the franchise tax act unconstitutional and
ordered the Comptroller to refund franchise taxes paid by Bealls. See id. § 171.002, .110, .152,
.1532. The Comptroller appeals. We will reverse and render.


THE CONTROVERSY


 This dispute arises out of Bealls' August 2, 1993 cessation of business in Texas for
franchise-tax purposes due to its merger with Palais Royal, Inc. Following the merger, Bealls has
continued to operate in Texas under the "Bealls" name but is owned and operated by Palais Royal. 
This Court has previously considered the application of the portion of the 1991 franchise tax act
amendments providing for an "additional tax" (3) to the Bealls/Palais Royal merger. See Rylander v.
3 Beall Brothers 3, Inc., 2 S.W.3d 562 (Tex. App.--Austin 1999, pet. denied) ("Beall Brothers I"). 
The 1991 amendments also added a corporation's earned surplus to the tax base from which to
calculate the corporation's franchise-tax liability. See Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch.
5, § 8.03, 1991 Tex. Gen. Laws 153, amended by Act of May 30, 1999, 76th Leg., R.S., ch. 394,
§ 10, 1999 Tex. Gen. Laws 2454, 2454-55 (current version at Tex. Tax Code Ann. §171.002 (West
2001)). In Beall Brothers I, we described the Texas franchise-tax scheme appropriate to the
circumstances of the current controversy, with citations to applicable authority. See 2 S.W.3d at 564-65. In the interest of brevity, we will generally describe here that scheme without citation.

 The Texas franchise tax is imposed on the value of the privilege of doing business
in Texas. The tax is imposed annually on each corporation that is incorporated in Texas or that
conducts business in Texas. A corporation's franchise-tax liability is based on the business done by
the corporation during its last accounting period ending in the year before the year in which the
corporation's tax report is due (the "privilege period"). The tax is calculated by multiplying the
franchise-tax base by the franchise-tax rate.

 Before 1992, the franchise-tax base was comprised solely of a corporation's "taxable
capital." Taxable capital included the corporation's "stated capital" and "surplus." Stated capital
is the sum of the par value of all shares of the corporation having a par value that have been issued
plus the consideration fixed by the corporation for all shares without par value that have been issued. 
Surplus is the corporation's net assets less its stated capital. Under this plan, capital-intensive
industries bore the brunt of the tax, even in unprofitable years. In 1991 the legislature amended the
franchise-tax act to establish "earned surplus" as the tax base from which to calculate the major
portion of a corporation's franchise tax. Earned surplus is the corporation's reportable federal net
income, less certain foreign-source income, plus officer and director compensation. As applicable
here, "[t]he rates of the franchise tax are . . . 0.25 percent per year of privilege period of net taxable
capital; and . . . 4.5 percent of net taxable earned surplus." Tex. Tax Code Ann. § 171.002(a) (West
2001). 

 The amendments were effective January 1, 1992 and "appl[y] to reports originally due
on or after that date." Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, art. 8, § 8.27(a), 1991 Tex.
Gen. Laws 134, 167. By its own election, Bealls operated as a fiscal-year taxpayer, as opposed to
a calendar-year taxpayer, and utilized a fiscal year ending on the Saturday nearest January 31. Thus,
the privilege period for the franchise-tax report required to be filed by Bealls in 1992 was the period
from February 4, 1990 to February 2, 1991, the accounting period that ended in the year before the
tax report was due. Because the earned surplus to be included in Bealls' 1992 report was based on
federal taxable income earned in the fiscal or calendar year ending on or before December 31, 1991,
Bealls' 1992 franchise tax was based on the income reported for the fiscal year ending February 2,
1991, the Saturday nearest January 31, 1991. This resulted in Bealls owing a franchise tax computed
on income earned beginning in February 1990, in contrast to calendar-year taxpayers who owed the
tax computed on income earned beginning in January 1991.

 Simply put, because of its fiscal year, Bealls' first tax report following the 1991
amendments was due May 15, 1992, the report date in the year--1992--following the year in which
Bealls' accounting period ended--February 2, 1991. Bealls is thus obligated to base its franchise
tax due in 1992, in part, on income earned in 1990, since a portion of its fiscal year ending February
2, 1991--February 4, 1990 through December 31, 1990--precedes calendar year 1991. A calendar-year taxpayer is only obligated to include 1991 income in its 1992 report because its accounting year
ends December 31, 1991. 

 Bealls paid the tax under protest and filed suit for a refund. (4) See Tex. Tax Code Ann. 
§ 112.052. Both parties filed motions for summary judgment. The district court granted Bealls'
motion and denied the Comptroller's, finding that the earned-surplus amendments were
unconstitutional as applied to Bealls, and ordered the Comptroller to refund a total of $480,383.80
in tax plus interest assessed on that amount by the Comptroller and statutory interest provided by the
tax code. See id. § 112.060. Additionally, the district court found that Bealls was "entitled to a
business-loss carryover of $4,345,079 for the Report Year 1992." (5) The Comptroller now appeals
by three issues.


STANDARD OF REVIEW


 The parties either stipulate to or do not dispute the material facts in this case. 
Therefore, whether the district court properly granted summary judgment is a question of law, and
we will review the district court's decision de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695,
699 (Tex. 1994); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). When the
parties file competing motions for summary judgment and one is granted and the other denied, the
reviewing court should review the summary-judgment evidence presented by both sides and
determine all questions presented. Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).
The district court's final judgment states that Bealls' motion for summary judgment was granted on
its "constitutional claims." However, Bealls raised several constitutional claims and the judgment
does not specify which the district court found persuasive. Therefore, the Comptroller must attack
each claim raised by Bealls in its motion for summary judgment. See State Farm Fire & Cas. Co.
v. S.S. & G.W., 858 S.W.2d 374, 381 (Tex. 1993). 


DISCUSSION


Equal Taxation and Equal Protection Claims

 By its first issue, the Comptroller asserts that the district court erred in finding the
earned-surplus amendments unconstitutional under equal-taxation and equal-protection-of-law
standards because the amendments disproportionately impact fiscal-year taxpayers. We agree. The
Texas Constitution requires that taxation be equal and uniform. Tex. Const. art. VIII, § 1(a). More
generally, the United States Constitution requires equal protection of the laws for all persons within
a state. U.S. Const. amend. XIV, § 1. However, tax legislation receives special deference. See
Vinson v. Burgess, 773 S.W.2d 263, 266 (Tex. 1989). In challenging the constitutionality of the
earned-surplus amendments, Bealls bears the burden of establishing the failure of the statute to meet
constitutional requirements. See Enron Corp. v. Spring ISD, 922 S.W.2d 931, 934 (Tex. 1996). 
Additionally, because no fundamental right has been affected, the Comptroller need only show that
there is a rational, legitimate basis for the amendments. See Barshop v. Medina County
Underground Water Conservation Dist., 925 S.W.2d 618, 631 (Tex. 1996). 

 Bealls argues that the amendments fail to meet constitutional requirements in that
they have a disproportionate impact on fiscal-year taxpayers. The federal constitution does not
require equality of impact among taxpayers. See Rinaldi v. Yeager, 384 U.S. 305, 309 (1966)
(holding that Equal Protection Clause does not demand statutes be applied equally to all persons). 
Similarly, the Texas Constitution has no such requirement. We have previously held that a tax that
has a disproportionate impact is not "inherently unconstitutional so long as the legislation is
rationally related to a legitimate governmental goal and the system operates equally within each
class." Beall Brothers I, 2 S.W.3d at 567 (citing Tandy Corp. v. Sharp, 872 S.W.2d 814, 818 (Tex.
App.--Austin 1994, writ denied)). The Comptroller argues that the tax serves legitimate
governmental goals of convenience, reliability, efficiency, and conformity to federal tax periods. 
Furthermore, the earned-surplus amendments have a uniform starting date, reporting date, tax base,
and tax rates. See Tex. Tax Code Ann. § 171.152(c), .1532(b), .110(a), .002(a). All taxpayers were
required to pay taxes based on a twelve-month period ending on or before December 31, 1991. 
Therefore, all taxpayers falling within the class have been treated equally. See Sharp v. Caterpillar,
Inc., 932 S.W.2d 230, 240 (Tex. App.--Austin 1996, writ denied) (citing Hurt v. Cooper, 110
S.W.2d 896, 901 (Tex. 1937)). Because we must give special deference to tax statutes and because
the goals set forth by the Comptroller advance rational, legitimate governmental interests, we hold
that there is no denial of equal taxation or equal protection in the Comptroller's application of the
earned-surplus amendments to Bealls and sustain the Comptroller's first issue. 


Retroactivity, Takings and Due Process Claims

 By its second issue, the Comptroller contends that the earned-surplus amendments
do not conflict with state or federal retroactivity, takings, or due process provisions. Article I,
section 16 of the Texas Constitution provides that "[n]o . . . retroactive law . . . shall be made." Tex.
Const. art. I, § 16. Retroactive application of a law is unconstitutional if it destroys or impairs a
vested right. Grocers Supply Co. v. Sharp, 978 S.W.2d 638, 643 (Tex. App.--Austin 1998, pet.
denied). Bealls bases its retroactivity claim on the fact that the taxes due for 1992 were based on
income earned in 1990, before the effective date of the tax. This is because the earned-surplus
computation is tied to adjusted taxable income for federal-income-tax purposes for ease of
computation and efficiency. Our decision in General Dynamics v. Sharp controls the issue of
retroactivity. See 919 S.W.2d 861 (Tex. App.--Austin 1996, pet. denied). In that case, the franchise
tax was imposed on seven years of income, which was all reported in 1991. We held that "as long
as a tax is levied after its effective date and is levied at least in part for the privilege of doing
business during the current year, then it is not a retroactive tax." Id. at 866. Because the franchise
tax in our case was levied against Bealls for the privilege of doing business in 1992, we hold that it
was not retroactively applied. Even if we construed the earned-surplus tax to apply retroactively,
General Dynamics holds that "no Texas taxpayer has a vested right in the continuation of a particular
measurement method for the franchise tax." Id. at 867 (citing Smith v. Davis, 426 S.W.2d 827, 834
(Tex. 1968)).

 Bealls argues that the earned-surplus amendments act as an unconstitutional taking
as applied to it. Article I, section 17 of the Texas Constitution provides that "[n]o person's property
shall be taken . . . for or applied to public use without adequate compensation." Tex. Const. art. I,
§ 17. This provision has generally been confined to eminent domain proceedings. See Friedman
v. American Sur. Co., 151 S.W.2d 570, 577 (Tex. 1941). Although we recently held that takings-clause claims are not absolutely limited to eminent domain, we do not extend that holding to the
facts of this case. See Texas Workforce Comm'n v. MidFirst Bank, 40 S.W.3d 690, 697 (Tex.
App.--Austin 2001, pet. denied). MidFirst considered the issue of whether a state agency's
withholding of funds subject to a private party's perfected security interest constituted a taking. Id.
at 695-98; see also County of Burleson v. General Elec Capital Corp., 831 S.W.2d 54 (Tex.
App.--Houston [14th Dist.] 1992, writ denied) (illegal taking occurred where taxing authority did
not follow statutory procedure for foreclosure of tax lien). The State has the authority to levy and
collect taxes in a rational and legitimate manner. The exercise of that authority here does not amount
to a taking.

 Bealls next asserts that imposition of the tax is an illegal taking under the Fifth
Amendment to the United States Constitution, which provides: "private property [shall not] be taken
for public use, without just compensation." U.S. Const. amend. V. Bealls relies on Eastern
Enterprises v. Apfel, 524 U.S. 498 (1998). In Eastern Enterprises, the United States Supreme Court
held that a provision of the Coal Act, (6) "which establishe[d] a mechanism for funding health care
benefits for retirees from the coal industry and their dependants" was an unconstitutional taking,
primarily because of the Coal Act's "severe retroactive liability on a limited class of parties that
could not have anticipated the liability." Id. at 504, 529. We do not agree that such reasoning
applies to the case before us, which involves a tax, not an economic regulation. The Supreme Court
was careful in limiting its decision, observing that the "extent of Eastern's retroactive liability is
substantial and far reaching," and went on to note that the case was distinguishable from retroactive
tax provisions that are restricted to "short and limited periods." Id. at 534 (quoting United States v.
Darusmont, 449 U.S. 292, 296-97 (1981)). Additionally, the tax before us is levied prospectively
for the privilege of doing business in the state. Eastern was subjected to a regulation that required
it to pay lifetime health benefits for employees from decades past. Unlike the tax at issue here, the
regulation in Eastern Enterprises was not tied to any current business activity. Nor will we hold,
as Bealls urges, that


although there was a seeming exercise of the taxing power, the act complained of was
so arbitrary as to constrain to the conclusion that it was not the exertion of taxation,
but a confiscation of property; that is, a taking of the same in violation of the 5th
Amendment; or, what is equivalent thereto, was so wanting in basis for classification
as to produce such a gross and patent inequality as to inevitably lead to the same
conclusion.



Brushaber v. Union Pac. R.R., 240 U.S. 1, 24-25 (1916). We hold that, in enacting the earned-surplus amendments, the legislature acted within the constitutional confines of the Fifth Amendment,
and Bealls may not prevail on its federal-takings-clause claim.

 Bealls also raised state and federal due process claims in its motion for summary
judgment. The due-course-of-law provision in article I, section 19 of the Texas Constitution
contains both procedural and substantive components. Tex. Const. art. I, § 19; Barshop, 925 S.W.2d
at 632. There has been no complaint of lack of notice and opportunity to be heard. Therefore, the
requirements of procedural due process have been met. Because we hold there was no violation of
equal taxation, equal protection, retroactivity, or takings provisions, we hold that the requirements
of substantive due process were met. We hold that these same principles apply to Bealls' claim
under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. U.S.
Const. amend. XIV, § 1; see Norris v State, 788 S.W.2d 65, 72 (Tex. App.--Dallas 1990, pet. ref'd.)
(stating that courts have historically equated due-course-of-law provision of Texas Constitution with
due-process clause of United States Constitution). We hold that the implementation of the earned-surplus amendments does not offend the constitutional principles of retroactivity, takings, or due
process. We therefore sustain the Comptroller's second issue.


Business-Loss Carryovers

 By its third issue, the Comptroller contends that the district court erred in allowing
Bealls an apportioned business-loss carryover for report year 1992 as if it were a calendar-year
taxpayer, when it is a fiscal-year taxpayer. Business losses are any negative amounts after
apportionment and allocation. Tex. Tax Code Ann. § 171.110(e). They are carried forward to the
year succeeding the year they accrue and are offset against that year's earned surplus. Id. They may
be carried forward for up to four years or until they are exhausted. Id. 

 The district court apparently determined that calculating Bealls' franchise-tax liability
based on earned surplus before January 1, 1991 was unconstitutional because the scheme rendered
fiscal-year taxpayers subject to the tax earlier than calendar-year taxpayers would be subject to the
same tax. Thus the tax should be calculated beginning at the same time for both calendar- and fiscal-year taxpayers. For calendar-year taxpayers, the initial tax period would be from January 1, 1991
to December 31, 1991. For fiscal-year taxpayers, such as Bealls, the initial tax period would be from
January 1, 1991 until the end of the taxpayer's fiscal year that ended in 1992. It appears that the
district court recalculated Bealls' tax based on a period from January 1, 1991 to February 2, 1991
and determined that, during such period, Bealls had an earned surplus of zero and a net operating
loss. Therefore, Bealls was entitled to carry the loss over to the following report period. 

 We have held that the earned-surplus amendments are constitutional. There is
nothing in the tax code indicating that a business-loss carryover should be calculated for a period
different from that for which the earned surplus is calculated. See Tex. Tax Code Ann. § 171.110. 
Just as the franchise tax owed by Bealls for report year 1992 was to be calculated using its February
4, 1990 to February 2, 1991 fiscal-year accounting period, see id. § 171.1532(b), so should the
business-loss carryover be calculated using that same period. Bealls does not allege a net operating
loss for such period. We hold that the district court erred in determining Bealls was entitled to a
business-loss carryover for report year 1992 and sustain the Comptroller's third issue.


CONCLUSION


 Having sustained all of the Comptroller's issues, we reverse the district court's
judgment and render judgment that Bealls take nothing by its suit for a refund.



 

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson 

Reversed and Rendered

Filed: July 26, 2002

Publish
1. The comptroller and attorney general are statutory defendants in tax-protest suits. See Tex.
Tax Code Ann. § 112.151(b) (West 2001). Their interests do not diverge. We will therefore refer
to them jointly as the "Comptroller."
2. The parties rely on the 1992 code for this provision as it was the version in effect during the
audit period at issue. The amendments to this provision do not materially affect our case; therefore,
we cite to the current code for convenience.
3. See Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.02, 1991 Tex. Gen. Laws 152, amended
by Act of May 27, 1993, 73d Leg., R.S., ch. 546, § 1, 1993 Tex. Gen. Laws 2043 (current version
at Tex. Tax Code Ann. § 171.011 (West 2001)).
4. The amendments to the franchise tax also included an "additional tax," which is levied on a
corporation that is subject to the franchise tax but is no longer subject to the taxing jurisdiction of
the State in relation to the tax on net taxable earned surplus. See Tex. Tax Code Ann. § 171.011. 
These additional taxes were paid by Bealls when it merged with Palais Royal and ceased doing
business in Texas. The tax-protest suit that arose from that tax was previously resolved by this Court
and is not before us here. See Rylander v. 3 Beall Bros. 3, Inc., 2 S.W.3d 562 (Tex. App.--Austin
1999, pet. denied); see also Universal Frozen Foods v. Rylander, No. 03-01-646-CV, slip op., 2002
WL 990702 (Tex. App.--Austin May 16, 2002, no pet. h.).
5. The judgment also provided that "[w]ith regard to [Bealls'] constitutional claims concerning
officer and director compensation, the Court grants [the Comptroller's] Motion for Summary
Judgment and denies [Bealls'] Motion for Summary Judgment." Neither party has appealed this
portion of the district-court judgment.
6. See 26 U.S.C. §§ 9701-9722 (1994 & Supp. II 1996).