Carole Keeton **RYLANDER,** Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellants,

v.

**3 BEALL BROTHERS 3, INC., Appellee.**

No. 03–98–00533–CV.

Court of Appeals of Texas, Austin.

Aug. 26, 1999.

Rehearing Overruled Sept. 10, 1999.

John Cornyn, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Austin, for Appellants.

Ray Langenberg, Scott, Douglass & McConnico, L.L.P., Austin, for Appellee.

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The Comptroller and the Attorney General are statutory defendants in tax refund suits. *See* Tex. Tax Code Ann. § 112.151(b) (West 1992). This appeal was originally filed in the names of the predecessors to the present Comptroller and Attorney General. We have substituted the current holders of those offices

Before Justices KIDD, PATTERSON and POWERS.*

JAN P. PATTERSON, Justice.

We withdraw our original opinion and judgment issued July 15, 1999, and substitute this one in its place.

3   Beall Brothers 3, Inc. ("Bealls") sued appellants (collectively, "the Comptroller") in district court for a refund of "additional tax."[1] The district court granted summary judgment in favor of Bealls. We will reverse the district court judgment and render judgment in favor of the Comptroller.

## THE CONTROVERSY

This is a franchise tax case.[2] The Texas franchise tax is imposed on the value of the privilege of doing business in Texas. *See Bullock v. National Bancshares Corp.,* 584 S.W.2d 268, 270 (Tex.1979); *General Dynamics Corp. v. Sharp,* 919 S.W.2d 861, 863 (Tex.App.—Austin 1996, writ denied). The franchise tax is imposed annually on each corporation that is incorporated in Texas or that conducts business in Texas. *See* Tex. Tax Code Ann. § 171.001 (West 1992 & Supp.1999). A corporation's franchise tax liability is based on the business done by the corporation during its last accounting period that ends in the year before the year in which the tax is due (the "privilege period"). *Id.* §§ 171.151, .153, .1532. The tax is calculated by multiplying the franchise tax base by the franchise tax rate. *Id.* § 171.002.

Prior to 1992, the franchise tax was based solely on a corporation's taxable capital.[3] Capital intensive industries bore

as the correct parties to this proceeding. *See* Tex.R.App. P. 7.2(a).

2. *See* Tex. Tax Code Ann. §§ 171.001–.687 (West 1992 & Supp.1999) (the "Franchise Tax Act").

3. A corporation's taxable capital consists of stated capital and surplus. *See* Tex. Tax Code Ann. § 171.101(a)(1) (West 1992). Stated capital is defined by reference to the Texas Business Corporation Act. *See* Tex. Bus. Corp.

the brunt of the tax, even in unprofitable years. *See General Dynamics Corp.,* 919 S.W.2d at 863. In 1991, the Texas Legislature amended the Franchise Tax Act to add earned surplus as a tax base from which to calculate the franchise tax.[4] *See* Tax Code § 171.002. The amendment became effective on January 1, 1992.

The 1991 Franchise Tax Act amendment also added the "additional tax" that is at issue in this case. *See* Tex. Tax Code Ann. § 171.011 (West 1992) (since amended). The additional tax is levied on a corporation that is subject to the franchise tax and that is no longer subject to the taxing jurisdiction of the State in relation to the tax on net taxable earned surplus. *See id.* § 171.0011(a). The additional tax is calculated by multiplying the franchise tax rate by the corporation's earned surplus computed on "the period beginning on the day after the last day for which the tax imposed on net taxable earned surplus was computed." *Id.* § 171.0011(b). The tax ends on the date the corporation "is no longer subject to the taxing jurisdiction of this state." *Id.* According to the Comptroller, the additional tax is designed to reduce tax revenue losses caused by corporate reorganizations.

Prior to August 2, 1993, Bealls was an apparel retailer incorporated in Texas. As of January 1993, Bealls operated 110 retail outlets in Texas, 10 retail outlets in Oklahoma, 8 retail outlets in New Mexico, and 3 retail outlets in Alabama. Bealls used a fiscal year accounting period ending on the Saturday nearest to January 31. Thus, for the privilege of doing business in Texas for calendar year 1992, the Franchise Tax Act required Bealls to base its 1992 franchise tax return on its accounting year beginning February 4, 1990, and ending February 2, 1991. For the privilege of doing business in Texas in calendar year 1993, the Act required Bealls to base its 1993 return on its accounting year beginning February 3, 1991, and ending February 1, 1992. Bealls paid the franchise tax assessed on its earned surplus for calendar years 1992 and 1993.

Bealls ceased doing business in Texas for franchise tax purposes on August 2, 1993, when it merged with Palais Royal, Inc.,[5] and has not since been subject to the regular annual franchise tax. *See Sunoco Terminals, Inc. v. Bullock,* 756 S.W.2d 418, 421 (Tex.App.—Austin 1988, no writ) (when two corporations merge, only one entity remains responsible for regular annual franchise tax); *Texaco, Inc. v. Calvert,* 526 S.W.2d 630, 634 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). Bealls did, however, earn $16.2 million in profits from February 2, 1992 (the day after the last day for which the tax imposed on net taxable earned surplus was computed) to August 2, 1993 (the day Bealls was no longer subject to the taxing jurisdiction of Texas). In accordance with the additional tax statute, Bealls' additional tax liability on these eighteen months of previously untaxed earned surplus was $732,559.27.

Act Ann. art. 1.02(24) (West Supp.1999) (defining stated capital as the sum of all shares of the corporation having a par value that have been issued and the consideration fixed by the corporation for all shares without par value that have been issued). The Franchise Tax Act defines surplus as net assets minus stated capital. *See* Tex. Tax Code Ann. § 171.109(a)(1) (West 1992). *Net assets are* total assets minus total debts. *Id.* § 171.109(a)(2).

4. Earned surplus is reportable federal income, less certain foreign source income, plus officer and director compensation. *See* Tex. Tax Code Ann. § 171.110(a)(1) (West 1992 &

Supp.1999); *see also General Dynamics Corp. v. Sharp,* 919 S.W.2d 861, 864 n. 4 (Tex. App.—Austin 1996, writ denied) (citing *Southern Realty Corp. v. McCallum,* 65 F.2d 934, 935–36 (5th Cir.), *cert. denied,* 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596 (1933)) (past income used to measure privilege of doing business in current year because past wealth is financial starting point for current year's business).

5. Bealls continues to operate in Texas under the Bealls name, but it is owned by a parent company and operated by Palais Royal.

Bealls paid the tax and filed a tax refund claim with the Comptroller. *See* Tax Code § 111.104. The claim was denied, as was Bealls' motion for rehearing. *Id.* § 111.105. Bealls then sued the Comptroller in district court, claiming that the additional tax was unconstitutional because fiscal year taxpayers who terminate their separate corporate existence at the same time as calendar year taxpayers owe tax on earned surplus over a longer period. For example, when Bealls ceased to do business in Texas on August 2, 1993, it paid the additional tax on eighteen months of income (February 2, 1992 to August 2, 1993) while a calendar year taxpayer ceasing to do business in Texas on the same date would have paid additional tax on only seven months of income (January 1, 1993 to August 2, 1993). Bealls argued that because there is no basis for this discrimination, the additional tax violates the constitutional requirements of equal protection and equal and uniform taxation.[6] Bealls also contended that the additional tax violated the federal commerce clause. *See* U.S. Const. art. I, § 8. The trial court granted Bealls' motion for summary judgment and denied the Comptroller's motion for summary judgment, and the Comptroller appeals to this Court.

### DISCUSSION AND HOLDINGS

■■■ The parties have either stipulated to or do not dispute the facts material to this case. Consequently, the propriety of summary judgment is a question of law. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). We therefore review the trial court's decision *de novo* to determine whether Bealls was entitled to judgment as a matter of law.[7] *See id.;*

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

In its first issue presented, the Comptroller argues that the additional tax is constitutional as applied to Bealls and other fiscal year taxpayers because (1) the additional tax applies the same standard of value to all taxpayers, and (2) the State has a legitimate interest in raising revenue and mitigating the fiscal effects of corporate reorganizations. The Comptroller asserts these arguments in response to Bealls' position on summary judgment that the additional tax is unconstitutional because it taxes Bealls, a fiscal year taxpayer, over a longer period of time than calendar year taxpayers.

■■■ In determining the constitutionality of a statute, we begin with a presumption that it is constitutional. *See Enron Corp. v. Spring Indep. Sch. Dist.,* 922 S.W.2d 931, 934 (Tex.1996) (citing *HL Farm Corp. v. Self,* 877 S.W.2d 288, 290 (Tex.1994) & *Spring Branch Indep. Sch. Dist. v. Stamos,* 695 S.W.2d 556, 558 (Tex. 1985)). Courts are to presume that "the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not sufficient legal basis for striking down legislation...." *Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995).

■■■ Tax legislation receives special deference. *See Vinson v. Burgess,* 773 S.W.2d 263, 266 (Tex.1989); *see also Regan v. Taxation With Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983). Moreover, because the legislature enacts statutes imposing franchise tax purely for revenue purposes, we liberally

---

**6.** *See* Tex. Const. art. I, § 3 ("All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."); art. VIII, § 1(a) ("Taxation shall be equal and uniform."); U.S. Const. amend. XIV, § 1 (providing that no State shall "make or enforce any law which shall ... deny any

person within its jurisdiction the equal protection of the laws.").

**7.** Where both parties file a motion for summary judgment, and one is granted and one is denied, we determine all questions presented and render such judgment as the trial court should have rendered. *See Commissioners Court v. Agan,* 940 S.W.2d 77, 80 (Tex.1997).

construe franchise tax statutes so as to effectuate their purpose. *See Federal Crude Oil Co. v. Yount–Lee Oil Co.*, 122 Tex. 21, 52 S.W.2d 56, 61 (1932). The party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *See Enron Corp.*, 922 S.W.2d at 934.

■ Both the Texas Constitution and the United States Constitution require equal protection of the law. *See* Tex. Const. art. I, § 3; U.S. Const. amend. XIV, § 1. Bealls makes no claim that the additional tax statute infringes upon a fundamental right; therefore, the additional tax statute must only be rationally related to a legitimate state purpose to withstand Bealls' equal protection challenge. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 631 (Tex.1996); *Reuters Am., Inc. v. Sharp*, 889 S.W.2d 646, 656 (Tex.App.—Austin 1994, writ denied); *see also Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973).

■ The equal and uniform requirement of the Texas Constitution is substantially similar to the equal protection clause of the Fourteenth Amendment. *See Railroad Comm'n v. Channel Indus. Gas Co.*, 775 S.W.2d 503, 507 (Tex.App.—Austin 1989, writ denied). The mandate that all taxes be equal and uniform requires only that all persons falling within the same class be taxed alike. *See Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 240 (Tex. App.—Austin 1996, writ denied) (citing *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 901 (1937)). A tax classification will be upheld unless it has no rational basis. *See id.*

■ Bealls argues that the additional tax violates the constitutional requirements of equal protection and equal and uniform taxation because similarly situated taxpayers are treated differently based solely upon their choice of accounting year. Bealls also contends that the Comptroller has no legitimate reason for favoring calendar year taxpayers or penalizing fiscal year taxpayers.

Bealls relies primarily on *Bullock v. Sage Energy Co.*, 728 S.W.2d 465 (Tex. App.—Austin 1987, writ ref'd n.r.e.). In that case, Sage, an operator of oil and gas properties, attacked a rule promulgated by the Comptroller that required a corporation to compute its franchise tax based on its financial condition as shown in its books and records of account. *See id.*, 728 S.W.2d at 465. Because Sage's shares were publicly traded, the Securities and Exchange Commission ("SEC") required Sage to capitalize its intangible drilling costs on its books and records. Corporations whose shares were not publicly traded were not subject to this SEC regulation; they were able to treat intangible drilling costs as expenses on their books and records. Because the franchise tax statute in effect at the time calculated franchise tax liability solely on the amount of a taxpayer's taxable capital, capitalizing intangible drilling costs (as opposed to expensing) led to a higher franchise tax assessment for Sage.

This Court concluded that although intangible drilling costs have the same value to all corporations, their value was ascertained by different standards under the Comptroller's rule. *See id.* at 468. While Sage's intangible drilling costs were capitalized at full value, the same costs for similar corporations were not capitalized at all based solely upon the accounting method employed by the corporation. *See id.* Accordingly, this Court held that "Sage was denied the right to equal and uniform taxation provided by the Constitution." [8] *Id.*

---

8. To remedy this situation, the legislature in 1987 added to the Franchise Tax Act the requirement that corporations use generally accepted accounting principles ("GAAP") for bookkeeping. *See* Tex. Tax Code Ann. § 171.109(b) (West 1992); *Texas Utils. Elec.*

The Comptroller argues that *Sage Energy* is distinguishable because it concerns the imposition of a particular method of accounting upon a corporation, while the instant case concerns a corporation's election of an accounting year. We agree. Both *General Dynamics* and *Sunoco Terminals*, two cases relied upon by the Comptroller, are more analogous to the instant case.

In the former case, General Dynamics entered into a contract in 1984 with the United States military to manufacture fighter jets. *See General Dynamics*, 919 S.W.2d at 864. General Dynamics manufactured and delivered the jets over a period of seven years, receiving profits each year. For federal income tax purposes, however, General Dynamics elected to utilize the "completed contract" method of reporting its profits; thus, it realized the entire seven years' worth of profits, totaling $974 million, in 1991, the year in which the contract was completed.

As discussed previously, in 1991, the Franchise Tax Act was amended to add earned surplus as a method of calculating a corporation's tax liability. Due to its use of the completed contract method of reporting its profits, General Dynamics owed franchise tax on the full $974 million of earned surplus. General Dynamics paid the tax under protest and sued the Comptroller. This Court held that the Comptroller was permitted to assess franchise tax on the full amount of earned surplus realized in 1991. *See id.* at 866–67.

In *Sunoco Terminals*, a newly formed corporation received capital equipment from a related corporation. Due to the timing of the calculations necessary to compute franchise tax, the assets were included in the franchise tax bases of both corporations. This Court held that the double counting was a permissible consequence of the taxpayers' decision to transfer the assets at an inopportune time. *See Sunoco Terminals, Inc.*, 756 S.W.2d at 420–21. Furthermore, this Court ex-

plained that the decision to establish a policy that "all sales of capital equipment by established companies to newly formed companies carry a concomitant tax credit" was one for the legislature and not the courts. *Id.* at 421.

We also find *Southern Clay Products, Inc. v. Bullock*, 753 S.W.2d 781 (Tex. App.—Austin 1988, no writ), to be instructive. In that case, this Court again considered the computation of franchise tax based on a corporation's financial condition as shown in its books and records of account. The stock of Southern Clay was acquired by Gonzales Clay Corporation. Following the acquisition, the parent company of both Southern Clay and Gonzales Clay was a British corporation. The parent required Southern Clay to increase the book value of certain of its assets to reflect "takeover values," or the acquisition cost of the company. Accordingly, Southern Clay prepared two sets of accounting books, one to reflect the historical cost of its assets and one to reflect the higher takeover values.

For the 1980 fiscal year, Southern Clay maintained both ledgers and based its franchise tax return on the historical cost of its assets. The Comptroller accepted the calculation. For the 1981 fiscal year, however, Southern Clay maintained only the ledger based on takeover values. The historical costs were recorded on subsidiary ledgers or worksheets. When Southern Clay attempted to employ the worksheets to calculate its franchise tax on a historical basis, the Comptroller objected, citing the rule requiring a corporation to report its assets and pay franchise tax based upon information contained in its general ledger. *See id.* at 783. The Comptroller assessed Southern Clay franchise tax based on the takeover values in its general ledger, and Southern Clay sued in district court for a refund.

The district court rendered judgment that Southern Clay take nothing. South-

ern Clay appealed, arguing among other things that the franchise tax assessment violated the equal and uniform taxation clause of the Texas Constitution. Specifically, Southern Clay contended that:

> if a corporation with the same assets as appellant kept a general ledger based on its "takeover values" and a general ledger based on its historical values, the Comptroller would permit it to pay lower franchise tax based on the historical ledger kept in accordance with generally accepted accounting principles. At the same time, [Southern Clay] would be required to pay a higher franchise tax for the same value of doing business solely because it kept one general ledger based on "takeover values" along with subsidiary historical records that the Comptroller rejects as "working papers."

*Id.* at 784. This Court affirmed the judgment of the district court and, in doing so, highlighted the district court's finding that there was no evidence that taxpayers similarly situated to Southern Clay were allowed to use the historical cost method of accounting while Southern Clay was required to use the takeover value method. *Id.*

In *General Dynamics, Sunoco Terminals,* and *Southern Clay,* the taxpayer was responsible for the election that resulted in unfavorable tax consequences. There is no indication in *General Dynamics* that the taxpayer was required to utilize the completed contract method of reporting its profits; therefore, one must assume that the taxpayer could have reduced its 1991 franchise tax liability by structuring the transaction in a different manner. In *Sunoco Terminals,* the taxpayer could have reduced its franchise tax liability by structuring the asset transfer in a different manner, or by petitioning the Comptroller for an alternate allocation method. *See Sunoco Terminals,* 756 S.W.2d at 422. Similarly, Southern Clay was "not required by the Comptroller to use a particular accounting method but rather [could]

employ one of its own choosing." *Southern Clay,* 753 S.W.2d at 784.

■ Likewise, Bealls had the option of electing to maintain its accounts on either a calendar year or fiscal year basis. There is no doubt that Bealls' choice to be a fiscal year taxpayer resulted in a greater additional tax burden to Bealls than would have been assessed had Bealls chosen to be a calendar year taxpayer. Nonetheless, a tax system that results in one party paying a disproportionately higher tax is not inherently unconstitutional so long as the legislation is rationally related to a legitimate governmental goal and the system operates equally within each class. *See Tandy Corp. v. Sharp,* 872 S.W.2d 814, 818 (Tex.App.—Austin 1994, writ denied) (citing *Channel Indus. Gas Co.,* 775 S.W.2d at 507–08).

To determine whether the additional tax statute operates equally within the relevant class—taxpayers no longer subject to the regular annual franchise tax—we will analyze the mechanics of additional tax assessment. The additional tax statute states in part:

§ 171.0011. Additional Tax

(a) An additional tax is imposed on a corporation that is subject to the tax imposed under Section 171.001 and that is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus.

(b) The additional tax is equal to the rate then in effect under Section 171.002(a)(2) multiplied by the corporation's net taxable earned surplus computed on the period beginning on the day after the last day for which the tax imposed on net taxable earned surplus was computed under Section 171.1532 and ending on the date the corporation is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus.

Tex. Tax Code Ann. § 171.0011 (West 1992). According to the stipulated facts, Bealls filed a franchise tax return for 1992. The reporting period was based on Bealls' accounting year from February 4, 1990 to February 2, 1991. Bealls also filed a franchise tax return for 1993. The reporting period was based on Bealls' accounting year from February 3, 1991 to February 1, 1992. Because Bealls merged with Palais Royal on August 2, 1993, Bealls filed an additional tax return for the period from February 2, 1992 to August 2, 1993, a period of eighteen months. Had Bealls elected to be a calendar year taxpayer, it would have had a reporting period from January 1, 1991 to December 31, 1992 for 1992 and from January 1, 1992 to December 31, 1992 for 1993. Its additional tax period would have begun on January 1, 1993 and ended on August 2, 1993.

In each scenario, the beginning date of the additional tax period represents the first day on which the regular franchise tax was no longer applicable. Moreover, the ending date represents the first day Bealls was no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus. Therefore, the additional tax applies even-handedly because the amount of the tax is always based upon the period of previously untaxed earned surplus.

Moreover, the additional tax statute is rationally related to a legitimate government purpose. The Comptroller implemented the additional tax statute to raise revenue and promote the legitimate state purposes of convenience, efficiency, and reliability. Accordingly, the statute requires taxpayers to use their existing accounting years as a basis for the period of additional tax assessment. We cannot say that the Comptroller's decision to assess the additional tax on the period of previously untaxed earned surplus was irrational or unreasonable. *See Grocers Supply Co. v. Sharp,* 978 S.W.2d 638, 645 (Tex.App.—Austin 1998, pet. denied) (classification of taxpayers according to time

Comptroller adjudicated their claims had rational basis). We therefore sustain the Comptroller's argument and turn to the issue of whether the imposition of the additional tax on Bealls violates the commerce clause of the United States Constitution. *See* U.S. Const. art. I, § 8.

■ A state tax does not violate the commerce clause if it: (1) is applied to an activity with a substantial nexus with the taxing State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State. *See Vinmar v. Harris County Appraisal Dist.,* 947 S.W.2d 554, 555 (Tex.1997) (citing *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977)). Bealls argues that the additional tax violates the first and fourth requirement. *See Quill Corp. v. North Dakota,* 504 U.S. 298, 313, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) ("The first and fourth prongs ... limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce.").

■ The commerce clause requires "some definite link, some minimum connection, between a state and the person, property, or transaction it seeks to tax." *Allied–Signal, Inc. v. Director, Division of Taxation,* 504 U.S. 768, 777, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) (quoting *Miller Bros. Co. v. Maryland,* 347 U.S. 340, 344–45, 74 S.Ct. 535, 98 L.Ed. 744 (1954)). The commerce clause requirement of a substantial nexus with the taxing state is satisfied by the taxpayer's physical presence in the state. *See Lawrence Indus., Inc. v. Sharp,* 890 S.W.2d 886, 892–93 (Tex.App.—Austin 1994, writ denied); *see also Quill Corp.,* 504 U.S. at 312–14, 112 S.Ct. 1904. Bealls stipulated that "[p]rior to August 3, 1993, [Bealls] was an apparel retailer incorporated in Texas. As of January 1993, [Bealls] operated 110 retail outlets in Texas...." Bealls does not claim that its physical presence and operations in Texas in any way diminished during the

eighteen month additional tax period. Therefore, Bealls' nexus claim has no merit.

 Under the commerce clause, the measure of the tax must be reasonably related to the extent of the taxpayer's presence or activities within the taxing state and to the taxpayer's consequent enjoyment of the opportunities which the state has afforded. *See Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 629, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981). The tax must be tied to the earnings that the state has made possible, "insofar as government is the prerequisite for the fruits of civilization for which ... we pay taxes." *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 446, 61 S.Ct. 246, 85 L.Ed. 267 (1940). The "only benefit to which the taxpayer is constitutionally entitled ... [is] that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes." *Commonwealth Edison Co.,* 453 U.S. at 629, 101 S.Ct. 2946 (citing *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 522, 57 S.Ct. 868, 81 L.Ed. 1245 (1937)).

 The additional tax assessed Bealls was a percentage of the corporation's earned surplus during the period "beginning on the day after the last day for which the tax imposed on net taxable earned surplus was computed under Section 171.1532 and ending on the date the corporation is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus." Tax Code § 171.0011. Because the tax was tied to earnings, it was in proper proportion to Bealls' activities in Texas and therefore to the consequent enjoyment of the opportunities and protections which the State has afforded. *Commonwealth Edison Co.,* 453 U.S. at 626–27. When a tax is assessed in proportion to a taxpayer's activities or presence in a state, the taxpayer is shouldering its fair share of supporting the state's provision of police and fire protection, the benefits of a trained work force, and the advantages of a civilized society. *Id.* (quoting *Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 U.S. 207, 228, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980) and *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 445, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979)). We therefore sustain the Comptroller's argument.

### CONCLUSION[9]

Having concluded that the Comptroller's imposition of the additional tax upon Bealls is constitutional, we reverse the judgment of the district court and render judgment in favor of the Comptroller.

---

9. The Comptroller raises a third issue concerning whether the additional tax is properly classified as a privilege tax or a corporate income tax. Having already determined that the additional tax is constitutional, we need not address the issue.