# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00646-CV

**Universal Frozen Foods Company, its Successors-in-Interest, ConAgra, Inc. and Lamb Weston, Inc.; and Universal Foods Corporation, Appellants**

**v.**

**Carole Keeton Rylander, Successor-in-Interest to John Sharp, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Successor-in-Interest to Dan Morales, Attorney General of the State of Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. 98-01956, HONORABLE SCOTT JENKINS, JUDGE PRESIDING

This appeal involves a challenge to the additional tax component of the Texas franchise tax. *See* Tex. Tax Code Ann. ' 171.0011 (West 2002). Universal Frozen Foods Company (AUniversal@), its successors-in-interest, ConAgra, Inc. and Lamb Weston, Inc., and Universal Foods Corporation, challenged the validity of the additional tax and asserted, in the alternative, that the amount on which Universal was taxed was improper. After the parties filed competing motions for summary judgment, the trial court denied Universal=s motion and granted summary judgment in favor of Carole Keeton Rylander, successor-in-interest to John Sharp, Comptroller of Public Accounts of the State of Texas and John Cornyn, successor-in-interest to Dan Morales, Attorney General of the State of Texas (collectively the AComptroller@). We will affirm the district court=s judgment.

## BACKGROUND

In 1991, the Legislature amended the franchise tax statute primarily to add the earned surplus component to the franchise tax calculation. As part of the same amendment, the Legislature constructed the additional tax which forms the basis of this dispute. The franchise tax is an excise tax levied for the privilege of doing business in Texas during the year for which the tax is paid. *See General Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 866 (Tex. App.CAustin 1996, writ denied). After the 1991 amendment, the Comptroller may assess a corporation=s franchise tax liability based either on that corporation=s capitalization or its earned surplus generated in the previous accounting year. *See* Tex. Tax Code Ann. '' 171.110, .1532 (West 2002). Although the amount a corporation owes for the franchise tax is measured by that taxpayer=s financial circumstances during the previous accounting year, the earned surplus component of the franchise tax is not considered a corporate income tax. *See General Dynamics*, 919 S.W.2d at 866. The corporation is taxed for the privilege of doing business for the upcoming year based on its performance in the previous year. *Id.*

Like the franchise tax, the additional tax is a privilege tax. *See Rylander v. 3 Beall Brothers 3, Inc.*, 2 S.W.3d 562, 571 n.9 (Tex. App.CAustin 1999, pet. denied). The additional tax is imposed on a corporation that is no longer subject to the taxing jurisdiction of the state in relation to the earned surplus component of the franchise tax. *Id.* at 565; Tex. Tax Code Ann. ' 171.0011(a). The additional tax equals 4.5% of the corporation=s net taxable earned surplus computed for the period beginning on the day after the last day for which the franchise tax on net taxable earned surplus was assessed and ending on the date the corporation is no longer subject to the taxing jurisdiction of this state.

Tex. Tax Code Ann. ' 171.0011(b). The additional tax is designed to reduce tax revenue losses caused by corporate reorganizations and mergers. *Beall Brothers*, 2 S.W.3d at 565.

Universal raises two issues in this appeal. Initially, Universal attacks the validity of the additional tax, claiming that it taxes fiscal year taxpayers differently than calendar year taxpayers. If we overrule its first issue and find that the additional tax is valid, Universal asserts, in the alternative, that the Comptroller erred in assessing its additional tax liability based on an earned surplus that was not attributable to Universal, but rather to Universal=s parent corporation.

In order to understand Universal=s complaints, a brief description of Universal=s corporate structure is necessary. Universal was a wholly owned subsidiary of Universal Holdings, Inc., which itself was a wholly owned subsidiary of Universal Foods Corporation. Of these three corporations, only Universal conducted business in Texas. Universal ceased to do business in Texas on August 1, 1994, after it was sold to an unrelated corporation and then merged into one of the purchasing corporation=s subsidiaries.[1] After the merger, Universal was no longer subject to the earned surplus component of the franchise tax. Accordingly, Universal became liable for the additional tax on its earned surplus, measured from the day after the last day of its previous accounting year until August 1, 1994. *See* Tex. Tax Code Ann. ' 171.0011(b).

---

[1] The purchasing corporation that then merged Universal with its own subsidiary is ConAgra, Inc., a party to this lawsuit. The company with which Universal merged is Lamb Weston, Inc., also a party to this lawsuit.

## DISCUSSION

Universal=s first issue appears to be controlled by *Rylander v. 3 Beall Brothers 3, Inc.*, 2 S.W.3d 562 (Tex. App.CAustin 1999, pet. denied). That case required us to examine the newly amended franchise tax statute and determine whether the additional tax was constitutional. Beall Brothers raised the exact issues now asserted by UniversalCthat the operation of the additional tax requiring fiscal year taxpayers to pay more than calendar year taxpayers rendered the additional tax unconstitutional. In *Beall Brothers*, we carefully examined the constitutional principles of equal protection and equal and uniform taxation. We concluded that because the additional tax was rationally related to a legitimate governmental purpose and it applied equally and uniformly to all taxpayers, it withstood Beall Brothers= equal protection and equal and uniform application challenges. We arrived at this conclusion primarily because all taxpayers are treated equally, as a class, regardless of whether they are fiscal or calendar year taxpayers. Regardless of the election a corporation makes concerning its accounting period, every taxpayer=s additional tax period begins on the day that the franchise tax no longer applies to the taxpayer and ends on the day the taxpayer is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus.

We also concluded in *Beall Brothers* that the fact that fiscal year taxpayers may pay more tax than calendar year taxpayers does not create an equal protection problem. This conclusion was premised in large measure on the assumption that the taxpayer could voluntarily elect to be a fiscal or calendar year taxpayer. In *Beall Brothers*, we relied on a number of cases which hold that a taxpayer who makes an election relating to accounting practices that affects the corporation=s tax status binds itself to its prior election for future tax purposes. *See General Dynamics Corp. v. Sharp,* 919 S.W.2d 861 (Tex.

4

App.CAustin 1996, writ denied); *Sunoco Terminals, Inc. v. Bullock*, 756 S.W.2d 418 (Tex. App.CAustin 1988, no writ); *Southern Clay Prods., Inc. v. Bullock*, 753 S.W.2d 781 (Tex. App.CAustin 1988, no writ). Universal elected to operate on a fiscal year rather than a calendar year for accounting and tax purposes. Although this election results in a higher burden for additional tax purposes, Universal=s voluntary election remains binding.

Universal argues that *Beall Brothers* does not control this case because Universal did not actually make the election to operate on a fiscal year; rather, Universal=s parent corporation elected to operate on a fiscal year basis. But because Universal was a wholly owned subsidiary, its parent then required Universal to adopt the fiscal year election. Thus, Universal contends that its case more closely resembles *Bullock v. Sage Energy Co.*, 728 S.W.2d 465 (Tex. App.CAustin 1987, writ ref=d n.r.e.). In *Sage Energy*, the taxpayer was required to capitalize some of its costs because it was a publicly traded corporation and subject to Securities and Exchange Commission (ASEC@) regulations. Other privately-held corporations, which were not subject to SEC regulations, were allowed to report the same costs as expenses. This reporting difference resulted in unequal franchise tax liability, thereby denying the taxpayer the right to equal and uniform taxation. *Sage Energy* differs from *Beall Brothers* because the taxpayer in *Sage Energy* did not *elect* a reporting method that resulted in a higher tax burden; the reporting method was *required* by SEC regulations.

Universal analogizes its situation to that found in *Sage Energy*. However, Universal=s argument overlooks the fact that Universal=s parent has voluntarily made an election and that election was

not the result of any action by the Comptroller or any other governmental authority.  Therefore, we conclude that *Beall Brothers*, not *Sage Energy*, controls this case, and we overrule Universal=s first issue.

Having overruled Universal=s challenge to the validity of the additional tax, we now turn to its second issue.  Universal contends that the Comptroller improperly calculated Universal=s tax liability using an earned surplus that was reported by its parent corporation.  Federal law permits parent and subsidiary corporations to file consolidated tax returns for income tax purposes.  I.R.C. ' 1502.  Throughout Universal=s existence, it joined in a consolidated tax return filed by its parent.  In 1994, all of Universal=s stock was sold, resulting in an earned surplus for Universal in excess of $83 million.  Universal and its parent corporation treated that sale as an asset sale, pursuant to section 338 of the internal revenue code.  *See* I.R.C. ' 338.  Section 338 permits a selling corporation that is a member of a consolidated group to sell all of its stock and treat the transaction as a sale of assets that are owned by and attributable to the parent corporation.  *Id*.  By making the election for a deemed asset sale, the selling subsidiary corporation can receive favorable income tax treatment.  Therefore, as a result of the section 338 election, Universal contends that any income generated by the sale of the assets did not result in any net taxable income to Universal, but only to its parent corporation.

Universal=s basis for this argument lies in the fact that Universal belongs to a consolidated income tax return group.  The group files a consolidated income tax return in which the parent and its wholly owned subsidiaries may combine earnings and losses for the group to determine the group=s income tax assessment.  Ultimately, however, the parent owns all of the subsidiaries= assets and, thus, reports the final tax assessment for the group.  Accordingly, Universal argues that any sale of those assets becomes taxable

**6**

income only to the parent. We reject this argument because it contravenes specific Comptroller rules dealing with franchise tax treatment of subsidiary corporations that are part of consolidated income tax groups.

The Comptroller=s rules require that Universal, in computing its earned surplus, use the same methods used in filing its federal income tax return as a separate corporation. 34 Tex. Admin. Code '' 3.555(c), (e) (2001). Universal chose to report its sale as a deemed asset sale and make a section 338 filing. Section 338=s filing rules identify Universal as the target corporation for purposes of a deemed asset sale. I.R.C. ' 338(d)(2). At trial, Universal admitted that under section 338(h)(10) the target corporation recognizes a gain or loss after a sale. Accordingly, the $83 million gain from Universal=s sale was properly attributed to Universal in computing its earned surplus. *See id.* ' 338(h)(10); 34 Tex. Admin. Code ' 3.555(c).

Universal maintains that although it did recognize a gain from the sale, the gain was ultimately reported by its parent because of the consolidated tax return. This argument, however, contradicts the plain meaning of the tax code and the Comptroller=s rule 3.555(e). *See* Tex. Tax Code Ann. ' 171.110(h); 34 Tex. Admin. Code ' 3.555(e). The tax code requires that a corporation=s net taxable earned surplus be calculated solely on that corporation=s own financial condition; consolidated reporting is prohibited. Tex. Tax Code Ann. ' 171.110(h). The Comptroller=s rule provides the following instruction for calculating a corporation=s earned surplus filed pursuant to a consolidated return:

(e)  Consolidated income tax returns. For the purposes of this section, if a corporation joins in filing a consolidated federal income tax return, the corporation must compute its earned surplus as though no consolidated federal income tax return were filed.

**7**

> Therefore, taxable income, compensation, and other items must be computed as though a separate federal income tax return had been filed by the corporation.

34 Tex. Admin. Code ' 3.555(e). Further emphasizing this point is the Comptroller=s rule which explains the apportionment of a corporation=s earned surplus. Rule 3.557 requires a corporation to Areport gross receipts based solely on its own earned surplus because consolidated reporting of related corporations is prohibited.@ 34 Tex. Admin. Code ' 3.557(d)(3) (2001). The tax code and the Comptroller=s rules make it clear that filing a consolidated income tax return does not alter Universal=s additional tax liability because Universal must calculate its net taxable earned surplus as if Universal were not part of a consolidated income tax return group. Accordingly, the Comptroller=s rules require that we look past the fiction that Universal=s deemed asset sale does not constitute income attributable to Universal, but only to its parent.

The record reflects that Universal conceded that each member of the consolidated federal income tax return group had separate taxable income. Universal further conceded that each member of the group prepared a pro forma income tax calculation based solely on its own financial condition. That calculation was later combined with the pro forma calculations from the other members of the consolidated group and adjusted for Universal=s parent=s final income tax report. However, because the Comptroller=s rules clearly do not allow consolidated filing, Universal=s additional tax assessment must be derived solely from its own pro forma calculation. That pro forma calculation shows Universal as having recognized the gain from the deemed asset sale in question. Applying the Comptroller=s rules, we conclude that Universal may not shift its earned surplus to its parent by filing a consolidated income tax return. Accordingly, the

8

Comptroller=s assessment of Universal=s additional tax liability was proper.  We overrule Universal=s second issue.

## CONCLUSION

*Beall Brothers* controls Universal=s first issue challenging the validity of the additional tax. The disparate impact of the additional tax on fiscal year taxpayers results from a voluntary election made by the taxpayer.  Therefore, the additional tax complies with the principles of equal protection and equal and uniform taxation.  Alternatively, Universal may not rely on its status as a member of a consolidated income tax reporting group to alter its additional tax assessment.  The tax code and the Comptroller=s rules do not allow such reliance.  Accordingly, the trial court properly denied Universal=s motion for summary judgment and properly granted the Comptroller=s motion.  We overrule Universal=s points of error and affirm the judgment of the trial court.

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:  May 16, 2002

Publish