TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00646-CV







Universal Frozen Foods Company, its Successors-in-Interest, ConAgra, Inc. and Lamb
Weston, Inc.; and Universal Foods Corporation, Appellants


v.



Carole Keeton Rylander, Successor-in-Interest to John Sharp, Comptroller of Public
Accounts of the State of Texas; and John Cornyn, Successor-in-Interest to Dan Morales,
Attorney General of the State of Texas, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 98-01956, HONORABLE SCOTT JENKINS, JUDGE PRESIDING 







 This appeal involves a challenge to the additional tax component of the Texas
franchise tax. See Tex. Tax Code Ann. § 171.0011 (West 2002). Universal Frozen Foods Company
("Universal"), its successors-in-interest, ConAgra, Inc. and Lamb Weston, Inc., and Universal Foods
Corporation, challenged the validity of the additional tax and asserted, in the alternative, that the
amount on which Universal was taxed was improper. After the parties filed competing motions for
summary judgment, the trial court denied Universal's motion and granted summary judgment in
favor of Carole Keeton Rylander, successor-in-interest to John Sharp, Comptroller of Public
Accounts of the State of Texas and John Cornyn, successor-in-interest to Dan Morales, Attorney
General of the State of Texas (collectively the "Comptroller"). We will affirm the district court's
judgment.



BACKGROUND

 In 1991, the Legislature amended the franchise tax statute primarily to add the earned
surplus component to the franchise tax calculation. As part of the same amendment, the Legislature
constructed the additional tax which forms the basis of this dispute. The franchise tax is an excise
tax levied for the privilege of doing business in Texas during the year for which the tax is paid. See
General Dynamics Corp. v. Sharp, 919 S.W.2d 861, 866 (Tex. App.--Austin 1996, writ denied). 
After the 1991 amendment, the Comptroller may assess a corporation's franchise tax liability based
either on that corporation's capitalization or its earned surplus generated in the previous accounting
year. See Tex. Tax Code Ann. §§ 171.110, .1532 (West 2002). Although the amount a corporation
owes for the franchise tax is measured by that taxpayer's financial circumstances during the previous
accounting year, the earned surplus component of the franchise tax is not considered a corporate
income tax. See General Dynamics, 919 S.W.2d at 866. The corporation is taxed for the privilege
of doing business for the upcoming year based on its performance in the previous year. Id.

 Like the franchise tax, the additional tax is a privilege tax. See Rylander v. 3 Beall
Brothers 3, Inc., 2 S.W.3d 562, 571 n.9 (Tex. App.--Austin 1999, pet. denied). The additional tax
is imposed on a corporation that is no longer subject to the taxing jurisdiction of the state in relation
to the earned surplus component of the franchise tax. Id. at 565; Tex. Tax Code Ann. § 171.0011(a). 
The additional tax equals 4.5% of the corporation's net taxable earned surplus computed for the
period beginning on the day after the last day for which the franchise tax on net taxable earned
surplus was assessed and ending on the date the corporation is no longer subject to the taxing
jurisdiction of this state. Tex. Tax Code Ann. § 171.0011(b). The additional tax is designed to
reduce tax revenue losses caused by corporate reorganizations and mergers. Beall Brothers, 2
S.W.3d at 565.

 Universal raises two issues in this appeal. Initially, Universal attacks the validity of
the additional tax, claiming that it taxes fiscal year taxpayers differently than calendar year taxpayers. 
If we overrule its first issue and find that the additional tax is valid, Universal asserts, in the
alternative, that the Comptroller erred in assessing its additional tax liability based on an earned
surplus that was not attributable to Universal, but rather to Universal's parent corporation.

 In order to understand Universal's complaints, a brief description of Universal's
corporate structure is necessary. Universal was a wholly owned subsidiary of Universal Holdings,
Inc., which itself was a wholly owned subsidiary of Universal Foods Corporation. Of these three
corporations, only Universal conducted business in Texas. Universal ceased to do business in Texas
on August 1, 1994, after it was sold to an unrelated corporation and then merged into one of the
purchasing corporation's subsidiaries. (1) After the merger, Universal was no longer subject to the
earned surplus component of the franchise tax. Accordingly, Universal became liable for the
additional tax on its earned surplus, measured from the day after the last day of its previous
accounting year until August 1, 1994. See Tex. Tax Code Ann. § 171.0011(b).


DISCUSSION

 Universal's first issue appears to be controlled by Rylander v. 3 Beall Brothers 3, Inc.,
2 S.W.3d 562 (Tex. App.--Austin 1999, pet. denied). That case required us to examine the newly
amended franchise tax statute and determine whether the additional tax was constitutional. Beall
Brothers raised the exact issues now asserted by Universal--that the operation of the additional tax
requiring fiscal year taxpayers to pay more than calendar year taxpayers rendered the additional tax
unconstitutional. In Beall Brothers, we carefully examined the constitutional principles of equal
protection and equal and uniform taxation. We concluded that because the additional tax was
rationally related to a legitimate governmental purpose and it applied equally and uniformly to all
taxpayers, it withstood Beall Brothers' equal protection and equal and uniform application
challenges. We arrived at this conclusion primarily because all taxpayers are treated equally, as a
class, regardless of whether they are fiscal or calendar year taxpayers. Regardless of the election a
corporation makes concerning its accounting period, every taxpayer's additional tax period begins
on the day that the franchise tax no longer applies to the taxpayer and ends on the day the taxpayer
is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned
surplus.

 We also concluded in Beall Brothers that the fact that fiscal year taxpayers may pay
more tax than calendar year taxpayers does not create an equal protection problem. This conclusion
was premised in large measure on the assumption that the taxpayer could voluntarily elect to be a
fiscal or calendar year taxpayer. In Beall Brothers, we relied on a number of cases which hold that
a taxpayer who makes an election relating to accounting practices that affects the corporation's tax
status binds itself to its prior election for future tax purposes. See General Dynamics Corp. v. Sharp,
919 S.W.2d 861 (Tex. App.--Austin 1996, writ denied); Sunoco Terminals, Inc. v. Bullock, 756
S.W.2d 418 (Tex. App.--Austin 1988, no writ); Southern Clay Prods., Inc. v. Bullock, 753 S.W.2d
781 (Tex. App.--Austin 1988, no writ). Universal elected to operate on a fiscal year rather than a
calendar year for accounting and tax purposes. Although this election results in a higher burden for
additional tax purposes, Universal's voluntary election remains binding.

 Universal argues that Beall Brothers does not control this case because Universal did
not actually make the election to operate on a fiscal year; rather, Universal's parent corporation
elected to operate on a fiscal year basis. But because Universal was a wholly owned subsidiary, its
parent then required Universal to adopt the fiscal year election. Thus, Universal contends that its
case more closely resembles Bullock v. Sage Energy Co., 728 S.W.2d 465 (Tex. App.--Austin 1987,
writ ref'd n.r.e.). In Sage Energy, the taxpayer was required to capitalize some of its costs because
it was a publicly traded corporation and subject to Securities and Exchange Commission ("SEC")
regulations. Other privately-held corporations, which were not subject to SEC regulations, were
allowed to report the same costs as expenses. This reporting difference resulted in unequal franchise
tax liability, thereby denying the taxpayer the right to equal and uniform taxation. Sage Energy
differs from Beall Brothers because the taxpayer in Sage Energy did not elect a reporting method
that resulted in a higher tax burden; the reporting method was required by SEC regulations.

 Universal analogizes its situation to that found in Sage Energy. However, Universal's
argument overlooks the fact that Universal's parent has voluntarily made an election and that
election was not the result of any action by the Comptroller or any other governmental authority. 
Therefore, we conclude that Beall Brothers, not Sage Energy, controls this case, and we overrule
Universal's first issue.

 Having overruled Universal's challenge to the validity of the additional tax, we now
turn to its second issue. Universal contends that the Comptroller improperly calculated Universal's
tax liability using an earned surplus that was reported by its parent corporation. Federal law permits
parent and subsidiary corporations to file consolidated tax returns for income tax purposes. I.R.C.
§ 1502. Throughout Universal's existence, it joined in a consolidated tax return filed by its parent. 
In 1994, all of Universal's stock was sold, resulting in an earned surplus for Universal in excess of
$83 million. Universal and its parent corporation treated that sale as an asset sale, pursuant to
section 338 of the internal revenue code. See I.R.C. § 338. Section 338 permits a selling corporation
that is a member of a consolidated group to sell all of its stock and treat the transaction as a sale of
assets that are owned by and attributable to the parent corporation. Id. By making the election for
a deemed asset sale, the selling subsidiary corporation can receive favorable income tax treatment. 
Therefore, as a result of the section 338 election, Universal contends that any income generated by
the sale of the assets did not result in any net taxable income to Universal, but only to its parent
corporation.

 Universal's basis for this argument lies in the fact that Universal belongs to a
consolidated income tax return group. The group files a consolidated income tax return in which
the parent and its wholly owned subsidiaries may combine earnings and losses for the group to
determine the group's income tax assessment. Ultimately, however, the parent owns all of the
subsidiaries' assets and, thus, reports the final tax assessment for the group. Accordingly, Universal
argues that any sale of those assets becomes taxable income only to the parent. We reject this
argument because it contravenes specific Comptroller rules dealing with franchise tax treatment of
subsidiary corporations that are part of consolidated income tax groups.

 The Comptroller's rules require that Universal, in computing its earned surplus, use
the same methods used in filing its federal income tax return as a separate corporation. 34 Tex.
Admin. Code §§ 3.555(c), (e) (2001). Universal chose to report its sale as a deemed asset sale and
make a section 338 filing. Section 338's filing rules identify Universal as the target corporation for
purposes of a deemed asset sale. I.R.C. § 338(d)(2). At trial, Universal admitted that under section
338(h)(10) the target corporation recognizes a gain or loss after a sale. Accordingly, the $83 million
gain from Universal's sale was properly attributed to Universal in computing its earned surplus. See
id. § 338(h)(10); 34 Tex. Admin. Code § 3.555(c).

 Universal maintains that although it did recognize a gain from the sale, the gain was
ultimately reported by its parent because of the consolidated tax return. This argument, however,
contradicts the plain meaning of the tax code and the Comptroller's rule 3.555(e). See Tex. Tax
Code Ann. § 171.110(h); 34 Tex. Admin. Code § 3.555(e). The tax code requires that a
corporation's net taxable earned surplus be calculated solely on that corporation's own financial
condition; consolidated reporting is prohibited. Tex. Tax Code Ann. § 171.110(h). The
Comptroller's rule provides the following instruction for calculating a corporation's earned surplus
filed pursuant to a consolidated return:



 Consolidated income tax returns. For the purposes of this section, if a
corporation joins in filing a consolidated federal income tax return, the
corporation must compute its earned surplus as though no consolidated federal
income tax return were filed. Therefore, taxable income, compensation, and
other items must be computed as though a separate federal income tax return
had been filed by the corporation.




34 Tex. Admin. Code § 3.555(e). Further emphasizing this point is the Comptroller's rule which
explains the apportionment of a corporation's earned surplus. Rule 3.557 requires a corporation to
"report gross receipts based solely on its own earned surplus because consolidated reporting of
related corporations is prohibited." 34 Tex. Admin. Code § 3.557(d)(3) (2001). The tax code and
the Comptroller's rules make it clear that filing a consolidated income tax return does not alter
Universal's additional tax liability because Universal must calculate its net taxable earned surplus
as if Universal were not part of a consolidated income tax return group. Accordingly, the
Comptroller's rules require that we look past the fiction that Universal's deemed asset sale does not
constitute income attributable to Universal, but only to its parent.

 The record reflects that Universal conceded that each member of the consolidated
federal income tax return group had separate taxable income. Universal further conceded that each
member of the group prepared a pro forma income tax calculation based solely on its own financial
condition. That calculation was later combined with the pro forma calculations from the other
members of the consolidated group and adjusted for Universal's parent's final income tax report. 
However, because the Comptroller's rules clearly do not allow consolidated filing, Universal's
additional tax assessment must be derived solely from its own pro forma calculation. That pro forma
calculation shows Universal as having recognized the gain from the deemed asset sale in question. 
Applying the Comptroller's rules, we conclude that Universal may not shift its earned surplus to its
parent by filing a consolidated income tax return. Accordingly, the Comptroller's assessment of
Universal's additional tax liability was proper. We overrule Universal's second issue.


CONCLUSION

 Beall Brothers controls Universal's first issue challenging the validity of the
additional tax. The disparate impact of the additional tax on fiscal year taxpayers results from a
voluntary election made by the taxpayer. Therefore, the additional tax complies with the principles
of equal protection and equal and uniform taxation. Alternatively, Universal may not rely on its
status as a member of a consolidated income tax reporting group to alter its additional tax
assessment. The tax code and the Comptroller's rules do not allow such reliance. Accordingly, the
trial court properly denied Universal's motion for summary judgment and properly granted the
Comptroller's motion. We overrule Universal's points of error and affirm the judgment of the trial
court.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: May 16, 2002

Publish

1. The purchasing corporation that then merged Universal with its own subsidiary is ConAgra,
Inc., a party to this lawsuit. The company with which Universal merged is Lamb Weston, Inc., also
a party to this lawsuit.