

IN THE
TENTH COURT OF APPEALS

———————————

No. 10-11-00441-CV

IN THE INTEREST OF R.N.W. AND T.M.W., CHILDREN

———————————

From the County Court at Law No. 2
Johnson County, Texas
Trial Court No. D201000169

## MEMORANDUM  OPINION

Mary W.[1] appeals from a judgment terminating her parental rights to her two children, R.N.W. and T.M.W.  TEX. FAM. CODE ANN. §§ 161.001(1) & 161.003(a) (West 2008).  Mary complains that the evidence was legally and factually insufficient to support the trial court's findings as to five separate predicate grounds for termination of her parental rights or that termination was in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O), (P), & 161.003(a) (West 2008).  Because we find that the evidence was legally and factually sufficient to support the trial court's findings as to section 161.001(O) for failure to complete her service plan and that termination was in the children's best interest, we affirm the judgment of the trial court.

---

[1] Mary is a pseudonym for Appellant.  *See* TEX. R. APP. P. 9.8(b)(1)(B).

*Burden of Proof*

In this proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services was required to establish one ground listed under subdivision (1) of the statute and to prove that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001(1); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the children as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and children. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

*Legal and Factual Sufficiency*

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180

S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id*. We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. We must consider, however, undisputed evidence even if it is contrary to the finding. *Id*.

It is necessary to consider all of the evidence, not just that which favors the verdict. *J.P.B.*, 180 S.W.3d at 573. However, we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id*. at 573-74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id*. at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not

reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

*Family Code Section 161.001(O)*

In her fifth issue, Mary W. complains that the evidence was legally and factually insufficient for the trial court to have determined that she did not comply with the provisions of her service plan because she substantially completed its requirements. The Family Code provides that parental rights may be terminated if a parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE ANN. § 161.001(1)(O) (West 2008).

We do not consider "substantial compliance" to be the same as completion for purposes of subsection (O) of the Family Code, nor does that subsection provide for excuses for failure to complete court ordered services. *See In re T.N.F.*, 205 S.W.3d 625, 630-31 (Tex. App.—Waco 2006, pet. denied) (emphasizing that parents must comply with every requirement of the court order and that subsection (O) does not allow for consideration of excuses for noncompliance); *In re M.C.G.*, 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *In re T.T.*, 228 S.W.3d 312, 319 (Tex.

App.—Houston [14th Dist.] 2007, pet. denied) (noting Texas courts have uniformly found substantial compliance with provisions of court order inadequate to avoid termination finding under subsection (O)). At most, any excuse for failing to complete a family service plan goes only to the best interest determination. *See T.N.F.*, 205 S.W.3d at 631; *see also Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976).

The evidence is undisputed that Mary did not complete every requirement of the service plan. Mary does not challenge the validity of the order or its contents. In the plan, Mary was required to "comply with taking her medications as prescribed and … not self medicate with illegal or mind altering substances." Mary conceded that she had tested positive for methamphetamine use more than one time during the pendency of the case, even after completing drug treatment. She admitted to using methamphetamine regularly. This alone demonstrates that Mary did not complete every requirement. She also did not receive a certificate of completion for parenting classes and was discharged by two counselors for failure to attend sessions. The evidence was legally and factually sufficient to prove that Mary failed to complete her service plan and therefore, termination was proper pursuant to section 161.001(1)(O). We overrule issue five.

Further, because it is only necessary that we determine that the evidence was legally and factually sufficient as to one predicate act under section 161.001(1), we will not address the sufficiency of the evidence relating to sections 161.001(1)(D), (E), (P), or

section 161.003(a). *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We overrule issues one, two, four, and six.

*Best Interest*

In her third issue, Mary argues that the evidence is legally and factually insufficient to support the trial court's finding that it was in the children's best interest to terminate the parent-child relationship. There are several nonexclusive factors that the trier of fact in a termination case may consider in determining the best interest of the child, which include (a) the desires of the child, (b) the emotional and physical needs of the child now and in the future, (c) the emotional and physical danger to the child now and in the future, (d) the parental abilities of the individuals seeking custody, (e) the programs available to assist these individuals to promote the best interest of the child, (f) the plans for the child by these or by the agency seeking custody, (g) the stability of the home or proposed placement, (h) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (i) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best

interest of the child. *Id*. On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id*.

*Desires of the Children*

Mary's children, R.N.W. and T.M.W., were approximately ages fourteen and twelve at the time of the final hearing. Both children had not visited with their mother in many months due to their mother's erratic behavior at her last visit. Both children had expressed that they no longer wished to see Mary or have contact with her. R.N.W. had stated that if she were returned to Mary's care, she would not remain but would run away.

*Children's Needs at Present and in the Future*

Both children have been diagnosed with some form of psychological issues and have had difficulty adjusting to foster care; however, both children have shown improvement while in foster care. They are placed together with a family that is interested in adopting them. The children were doing well in school while in foster care and were participating in extracurricular activities.

While the children lived with Mary, they were placed in a role as a caregiver to Mary at times. R.N.W. made her own arrangements of where to reside and was not living with Mary at the time of the removal. Both children had been in counseling during the pendency of the case and would likely continue afterward. Physically, the children were clean and healthy while in the care of the Department. While with Mary,

however, at times the children suffered from severe head lice and did not have hot water in their home. They had difficulties with being truant from school.

*Danger to Children Now and in the Future*

The children had been exposed to their mother's use of illegal drugs, irrational behaviors due to her mental illness, had been given alcohol routinely by their mother, were exposed to domestic violence and sexual misconduct by Mary, and had problems with truancy at school. Mary often went off of her prescribed medications which impaired her ability to function and at times she threatened to kill herself in front of the children. Much of Mary's meager SSI income was spent on cigarettes, alcohol, and illegal drugs. The girls were knowledgeable about drugs and drug paraphernalia from their mother and uncle.

*Parental Abilities of Those Seeking Custody*

While Mary did attend parenting classes, she did not demonstrate that her behavior would change or that she would exhibit good parenting skills. The provider of the parenting classes refused to give her a certificate of completion due to lack of progress. Visits with the children were terminated because of Mary's poor behavior at a visit and were never restored. Both therapists who had worked with Mary testified that she would be unable to properly parent the girls, and the psychologist who prepared a psychological evaluation expressed grave concerns regarding Mary's mental status and her ability to parent.

Mary admitted to intermittent long-term illegal drug and alcohol use and that she had been admitted to a psychiatric hospital during the pendency of the case. She continued using drugs and drinking even though it interacted with her prescribed medications. She had given both girls alcohol intermittently over time, at times to put them to sleep and seemed unconcerned as to the effects on them. It was evident that while the children were with Mary and if they were to return that Mary would rely heavily on them to take care of her. As to discipline, Mary stated that if her fourteen-year-old daughter was disobedient, she would slap her on the hand.

*Available Programs*

Mary was involved with the Department for approximately five years and had been involved off and on with MHMR to assist with her mental health issues. She had completed drug treatment but relapsed within a month of completion. At one point she had been involved with Adult Protective Services as well.

*Plans for the Children*

Mary's plans for the children were to take them back to her home and to continue as they had prior to the Department's intervention. The Department, however, planned to keep the girls with the current foster parents who want to adopt them.

*Stability of the Home or Proposed Placement*

While Mary had provided housing to the children, there otherwise was little or no stability provided and little, if any, progress had been made to improve the stability of her home or Mary's ability to provide for herself or the children while the children were in foster care. Conversely, the children have been placed in one foster home where the foster parents have expressed a desire to adopt them.

*Acts or Omissions of the Parent and Excuses for those Acts or Omissions*

Mary's uncontrolled mental illnesses have led to erratic and irresponsible behaviors, including poor relationships involving domestic violence and the use of illegal drugs and alcohol. She exposed the children to dangerous and abusive situations, which resulted in both children suffering from psychological trauma as well. She did not maintain consistency in her treatment of her illnesses and did not take her prescribed medications without breaks. Because her mental state was not stable, the trial court determined that she was unable to provide a safe and suitable home for the children.

Taking the above factors into consideration, the evidence was legally and factually sufficient for the trial court to have found that termination of Mary's parental rights was in the best interest of R.N.W. and T.M.W. We overrule issue three.

*Conclusion*

Having found that the evidence was legally and factually sufficient for the trial court to have terminated Mary's parental rights, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed June 6, 2012
[CV06]